**Motion for Rehearing Denied; Affirmed in part; and Reversed and Remanded in part; Opinion filed March 20, 2014 Withdrawn; and Substitute Opinion filed April 17, 2014.**



In the

# Fourteenth Court of Appeals

### NO. 14-13-00044-CV

**JOHANNES "JOE" ELMGREN AND VALARIE ELMGREN, INDIVIDUALLY AND AS NEXT FRIENDS OF THEIR MINOR CHILDREN, Appellants**

**V.**

**INEOS USA, LLC F/K/A INNOVENE USA, LLC, INEOS POLYMERS, INC., A/K/A INEOS OLEFINS, INEOS OLEFINS & POLYMERS USA, A DIVISION OF INEOS USA, LLC, AND JONATHAN "BUBBA" PAVLOVSKY, Appellees**

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 61,590**

### S U B S T I T U T E   O P I N I O N

Appellants Johannes "Joe" Elmgren and Valarie Elmgren, both individually and as next friends for their minor children (collectively, the "Elmgrens"), appeal

the trial court's summary judgment in favor of appellees, Ineos USA, LLC f/k/a Innovene USA, LLC, Ineos Polymers, Inc., a/k/a Ineos Olefins, Ineos Olefins & Polymers USA, a division of Ineos USA, LLC (collectively, "Ineos"), and Jonathan "Bubba" Pavlovsky, on all its claims. Joe was working for Ineos' subcontractor pursuant to a maintenance services contract. While replacing valves on a de-coke header system at Ineos' plant, Joe suffered burns from an explosion and release of super-heated gas. The Elmgrens present five issues, four of which relate to chapter 95 of the Texas Civil Practice and Remedies Code: (1) whether chapter 95 applies at all; (2) whether Ineos and Pavlovsky conclusively proved chapter 95 applies; (3) whether there is a fact issue on Ineos' and Pavlovsky's control over the work being performed; and (4) whether there is a fact issue on Ineos' and Pavlovsky's actual knowledge of the danger or condition resulting in Joe's injuries. The Elmgrens also argue that the trial court erred in denying their motion to compel responses to a production request for the names of Ineos' process engineers. Although we deny Ineos' and Pavlovsky's motion for rehearing, we withdraw the opinion issued in this case on March 20, 2014, and issue this substitute opinion. We affirm in part, and reverse and remand in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Appellant Johannes "Joe" Elmgren was employed as a boilermaker by Zachry Industrial, Inc. Zachry had contracted with Ineos Olefins & Polymers USA, a division of Ineos USA, LLC, to perform maintenance services at Ineos' plant. Joe reported to work at the plant at approximately 7:00 p.m. on June 22, 2010. Joe's task was to replace valves on a de-coke header on the Olefins #2 DDB 101B furnace. Joe's Zachry supervisor, David Robin, and Ineos' operator, Clint Pierce, conducted a lock out tag out (LOTO) procedure to ensure there was no gas present in the line. A sniff test for gas was performed at approximately 8:30 p.m.

2

with a zero result. Ineos issued the work permit for the valve replacement. At approximately 3:00 a.m., during the process of removing the second valve, super-heated gas was released in an explosion that resulted in burns to Joe's torso, neck, and jaw line.

The Elmgrens brought claims against Ineos and Pavlovsky for negligence and wrongful termination. The Elmgrens also sought exemplary damages. Pavlovsky is the working team leader over furnace maintenance at Ineos. Ineos and Pavlovsky filed traditional and no-evidence motions for summary judgment. Under their traditional motions, they argued that they qualified for protection from liability under chapter 95; they were not liable as a matter of law because they did not exercise or retain control, either contractually or actually, over the manner in which Joe's work was performed; and they were not liable as a matter of law because they had no actual knowledge of the danger or condition resulting in Joe's injuries. Under their no-evidence motions, Ineos and Pavlovsky argued that the Elmgrens produced no evidence of control over the work performed by Joe and no evidence of actual knowledge as required by chapter 95. The Elmgrens responded that chapter 95 did not apply to Pavlovsky because he is not a property owner, Ineos retained contractual and actual control over Joe's work, and Ineos had actual knowledge of the danger or condition resulting in Joe's injuries. The Elmgrens also argued that chapter 95 does not apply to their claims in this situation because they "arise from Ineos' direct role in informing Zachry's crew that the system was safe to proceed."[1]

---

[1] Ineos and Pavlovsky also moved for traditional summary judgment as to the Elmgrens' wrongful termination claim and for no-evidence summary judgment as to the Elmgrens' claims for wrongful termination and exemplary damages. The Elmgrens responded to these grounds in the trial court but have not raised, much less presented any argument or authority on, the granting of summary judgment on these claims on appeal. Therefore, they have abandoned these claims and we do not address summary judgment as to these claims. *See Duerr v. Brown*, 262 S.W.3d

3

The parties filed various other motions, including the Elmgrens' motion to compel the identity of Ineos' process engineers. The Elmgrens took additional depositions. Ultimately, after an oral hearing, the trial court granted Ineos' and Pavlovsky's motions for summary judgment. The trial court expressly found that chapter 95 applied to the Elmgrens' claims for personal injury; there was no genuine issue as to any material fact, and Ineos and Pavlovsky were entitled to judgment as a matter of law on all of the Elmgrens' claims; and Ineos and Pavlovsky did not exercise or retain control over Joe's work, and did not have actual knowledge of the danger or condition resulting in his injuries and fail to adequately warn. The judgment stated that it finally disposed of all of the Elmgrens' claims. The Elmgrens timely appealed.

## II. SUMMARY JUDGMENT STANDARDS

We review the trial court's granting of summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam) (citation omitted). Ineos' and Pavlovsky's motions for summary judgment are hybrid traditional and no-evidence motions. *See* Tex. R. Civ. P. 166a(c), (i). To the extent necessary, we therefore apply the established standards of review for each. *Brockert v. Wyeth Pharm., Inc.*, 287 S.W.3d 760, 764 (Tex. App.—Houston [14th Dist.] 2009, no pet.). To be entitled to summary judgment under rule 166a(c), a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). If the movant's motion and summary judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *See M.D. Anderson Hosp. & Tumor*

63, 69 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

4

*Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (citation omitted).

A no-evidence motion for summary judgment must be granted if: (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements. *See* Tex. R. Civ. P. 166a(i); *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 908 (Tex. App.— Houston [14th Dist.] 2009, no pet.). We sustain a no-evidence summary judgment where: (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Lowe's Home Ctrs., Inc. v. GSW Mktg, Inc.*, 293 S.W.3d 283, 287–88 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion'" that the challenged fact exists. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009) (quoting *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)).

In reviewing the granting of either type of summary judgment motion, we indulge every reasonable inference in favor of the nonmovant, resolve any doubts arising in its favor, and take as true all evidence favorable to it. *Echartea v. Calpine Corp.*, No. 14-10-00019-CV, 2011 WL 2684889, at *2 (Tex. App.—

Houston [14th Dist.] July 12, 2011, no pet.) (mem. op.) (citation omitted). Ordinarily, we first review the no-evidence summary judgment, then, if necessary, the traditional summary judgment as to the Elmgrens' claims. *See Ford Motor Co.*, 135 S.W.3d at 600. Here, we review the traditional summary judgment because the burden does not shift to the Elmgrens on the elements of control and actual knowledge unless and until Ineos and Pavlovsky conclusively establish that chapter 95 applies. *See Vanderbeek v. San Jacinto Methodist Hosp.*, 246 S.W.3d 346, 352 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

### III.    ANALYSIS

## A. Applicability of chapter 95

Chapter 95 of the Texas Civil Practice and Remedies Code was enacted in 1996 as part of a sweeping tort-reform package. *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 699 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 699 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (en banc)). "It was enacted because the legislature recognized that property owners often want to hire someone with expertise to repair or renovate some improvement on their property." *Dyall*, 152 S.W.3d at 699. Chapter 95 applies only to a claim:

> (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

> (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates or modifies the improvement.

Tex. Civ. Prac. & Rem. Code § 95.002 (West 2011) (titled "Applicability"). "Claim" is defined in chapter 95 as "a claim for damages caused by negligence."

6

*Id.* § 95.001(1). "Property owner" is defined as "a person or entity that owns real property primarily used for commercial or business purposes." *Id.* § 95.001(3). Under chapter 95:

> A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:
>
> > (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
> >
> > (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id.* § 95.003 (titled "Liability for Acts of Independent Contractors"). Section 95.003(1) served to codify the Texas Supreme Court's holding in *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex. 1985), which adopted section 414 and the accompanying comments of the Restatement (Second) of Torts.[2] *See Ellwood*, 214 S.W.3d at 700; *Dyall*, 152 S.W.3d at 699. Section 95.003(2) further limited a premises owner's liability by requiring a plaintiff to prove that the owner had actual, not merely constructive, knowledge of a dangerous condition on the premises. *See Ellwood*, 214 S.W.3d at 700; *Dyall*, 152 S.W.3d at 699.

---

[2] The *Redinger* court held that, while in general a premises owner does not have a duty to see that an independent contractor performs its work in a safe manner, the owner may be liable if it retains some control over the manner in which the contractor's work is performed. 689 S.W.2d at 418.

7

**B. The trial court did not err in granting summary judgment pursuant to chapter 95 as to negligence claims against Ineos arising from the condition of the improvement Zachry was repairing.**

### 1. Zachry and Joe were repairing the "gas process" improvement.

In their related first and second issues, the Elmgrens do not dispute that the facts at issue fall within subsection (1) of section 95.002 with respect to Ineos. The Elmgrens brought a claim for damages caused by negligence against a property owner or contractor (Ineos) for personal injury to an employee (Joe) of a subcontractor (Zachry). *See id.* § 95.002(1).[3] The Elmgrens instead assert that chapter 95 is inapplicable to their claims because Joe's injuries arose from the defective condition of the operation of the plant's gas process, which Ineos separately and solely controlled, rather than from any work being done by Joe to replace the de-coke header valves. *See id.* § 95.002(2). In other words, they contend Ineos did not prove Joe was working on the same improvement that resulted in his injuries.

The Elmgrens primarily rely on this court's plurality opinion in *Hernandez v. Brinker International, Inc.*, 285 S.W.3d 152 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (plurality op.). There, the plaintiff, a subcontractor employee, was hired to maintain and make repairs to a restaurant's air-conditioning system, which was located on the roof of the restaurant. That particular day, the plaintiff was supposed to replace a compressor motor. As he was walking to or from the air conditioner with the old or new motor, he fell through the roof. The *Hernandez*

---

[3] The Elmgrens' live pleadings, attached to Ineos' and Pavlovsky's summary judgment motions, alleged that Joe was an employee of Zachry and that "all Corporate Defendants were the owners of the premises" at issue in Alvin, Texas. Ineos and Pavlovsky also attached to their summary judgment motions the maintenance services contract between Ineos and Zachry, and an affidavit from Ineos' corporate deputy secretary Paul Capuzzi wherein he avers that the corporate Ineos defendants own the Alvin chemical plant.

8

plurality concluded that section 95.002(2) did not apply in such a situation:

> The roof and the air-conditioning system are separate improvements to real property. Section 95.002(2) states that Chapter 95 applies only to a claim "that arises from the condition or use of an improvement to real property where the contractor or subcontractor [repairs or modifies] the improvement." Therefore, pursuant to the plain language of section 95.002(2), Chapter 95 does not apply to a contractor's employee's claim against a property owner when the improvement the condition or use of which gives rise to the injury claim is not the same improvement the contractor was at the premise to address at the time of injury.

285 S.W.3d at 157–58 (alterations in orig.). The plurality concluded: "Hernandez's claim arises from the condition of the roof, but Hernandez did not repair or modify the roof. Hernandez repaired the air-conditioning system. Thus, under the plain language of section 95.002(2), Chapter 95 does not apply to Hernandez's claims." *Id.* at 161.

Ineos relies on cases where this court has concluded that the plaintiff's injuries did arise from the condition or use of the improvement the plaintiff was repairing or modifying. For example, in *Vanderbeek*, a hospital engaged a contractor for plumbing work necessary to remodel the emergency room. The plaintiff, a plumber who worked for the contractor, suffered chemical burns when a caustic liquid came out of a drainage pipe that he had previously capped. We concluded that section 95.002(2) applied and affirmed a take-nothing summary judgment for the hospital. 246 S.W.3d at 350–51, 353 ("Vanderbeek's negligence claim arises from the condition or use of the Hospital building, which is an improvement to real property. . . . The contractor (Humphrey Plumbing) repaired, renovated, or modified the Hospital building.").

Likewise, in *Dyall*, without specifically discussing the applicability of section 95.002(2), this court sitting en banc affirmed a take-nothing summary

9

judgment in favor of a paper mill owner in an action by an independent contractor's employees for respiratory injuries relating to the inhalation of toxic gases released from a pipe while they were repairing a leaking flange. 152 S.W.3d at 693–96, 710.

The plurality in *Hernandez*, however, did not take issue with *Vanderbeek* and *Dyall* because in those cases the facts supported that "the employee's injury was caused by a condition or the use of the improvement he was repairing or modifying." 285 S.W.3d at 161 (discussing *Vanderbeek*, 246 S.W.3d at 348–49; *Dyall*, 152 S.W.3d at 695–96).

Under the plain language of section 95.002(2), to meet their burden on summary judgment to show that chapter 95 applies to the Elmgrens' claims, Ineos and Pavlovsky must facially establish that the claims "arise[] from the condition or use of an improvement to real property where [Zachry] constructs, repairs, renovates, or modifies the improvement." *See* Tex. Civ. Prac. & Rem. Code § 95.002(2). As alleged, Zachry and Joe were working on repairing valves on the "common header system and specifically on a de-coke header" on the Olefins #2 DDB 101B furnace at Ineos' plant. The Elmgrens also alleged that Joe was severely injured by a "sonic boom type super heated explosion of gases" and that his injuries resulted from a "super heated gas leak" "into the line upon which he was working." The Elmgrens described this leak as "an unreasonably dangerous condition." They do not argue that the common header system and the de-coke header are not an improvement to real property, but rather that the particular LOTO line and valves Joe was working on do not qualify as the same improvement as the rest of the "gas process." Essentially, what the Elmgrens would have us do is to attempt to divide the plant's "gas process" system of furnaces and headers valve-by-valve or line-by-line into separate, discreet

10

improvements.  However, neither section 95.002(2) nor our case law, including the plurality in *Hernandez*, precludes us from determining these particular alleged facts indicate that the Elmgrens' claims arise from the condition of the "gas process" system improvement and that Zachry and Joe were repairing or modifying such improvement.  Rather, such a result is consistent with the plain language of section 95.002(2).  *See* Tex. Civ. Prac. & Rem. Code § 95.002(2).  In addition, this result is consistent with the outcomes in *Vanderbeek* and *Dyall*, and distinguishable from the *Hernandez* plurality.

We therefore conclude Ineos has conclusively proven that chapter 95 applies, and we overrule the Elmgrens' first and second issues as to Ineos—to the extent the Elmgrens alleged negligence claims arising from the condition of the improvement Zachry and Joe were repairing.  *See Vanderbeek*, 246 S.W.3d at 351.

## 2.  There is no genuine fact issue on Ineos' actual knowledge.

In their third issue, the Elmgrens argue that, to the extent chapter 95 applies, they raised a genuine fact issue that Ineos exercised or retained control over Zachry's and Joe's work.   *See* Tex. Civ. Prac. & Rem. Code § 95.003(1). Likewise, in their fourth issue, the Elmgrens argue that they raised a fact issue that Ineos had actual knowledge of the danger or condition resulting in Joe's burns and failed to adequately warn.  *See id.* § 95.003(2).

Both of these independent and necessary conditions of section 95.003 must be met before liability will be imposed upon the property owner.  *See id.* § 95.003; *Vanderbeek*, 246 S.W.3d at 352; *Ellwood*, 214 S.W.3d at 700; *Dyall*, 152 S.W.3d at 699.  Ineos moved for both traditional and no-evidence summary judgment on both prongs of section 95.003.   We already have determined that Ineos conclusively established that chapter 95 applies to claims against them to the extent they arise from the condition of the improvement Zachry and Joe were

11

repairing, so the trial court properly shifted the burden on summary judgment to the Elmgrens. *See Vanderbeek*, 246 S.W.3d at 352. Thus, under chapter 95, they had the burden to raise a fact issue on both the control and actual knowledge prongs in order to withstand summary judgment. *See* Tex. Civ. Prac. & Rem. Code § 95.003; *Ellwood*, 214 S.W.3d at 700 ("An owner may be aware of the danger, but exercise no control, or he may exercise control and have no actual knowledge of the danger; in either instance, the owner is statutorily shielded from liability."); *Dyall*, 152 S.W.3d at 699 ("The burden now rests upon the plaintiff to show both (1) control *and* (2) actual knowledge of the danger." (emphasis in orig.)).

Where the summary judgment evidence fails to raise a fact issue on one prong of section 95.003, we need not address the other prong. *See Bartee v. Baylor Coll. of Med.*, No. 14-06-00324-CV, 2007 WL 2989614, at *4 & n.3 (Tex. App.—Houston [14th Dist.] Oct. 16, 2007, no pet.) (mem. op.) (concluding trial court correctly granted summary judgment based upon section 95.003 where no fact issue raised as to control without addressing actual knowledge). Section 95.003(2) requires the Elmgrens to prove that Ineos had actual knowledge—as opposed to constructive knowledge—of the alleged dangerous condition. *See Ellwood*, 214 S.W.3d at 700. Actual knowledge of a dangerous condition is what a person actually knows, as distinguished from constructive knowledge, or what a person should have known. *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008) (per curiam) ("Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time.").

12

In its summary judgment motion, Ineos specifically argued there was no evidence Ineos had actual knowledge that gas existed in the pipe on which Joe was working at the time of the accident. In addition to the line being LOTO and the sniff test performed prior to the work resulting in zero, Ineos pointed to testimony from Joe that he did not have any information from anyone indicating Ineos knew of any valves leaking gas before his accident. Robin testified that no one from Ineos knew there was gas in the line before Joe starting working on the valves, and that if anyone from Ineos knew gas was present, Joe would not have been allowed to work on the line. Pavlovsky testified that Ineos was not aware and did not have knowledge of any leaking valves at the time of the accident. Rex Hill, day furnace operator for Ineos, testified that he was not aware of anyone from Ineos knowing of any gas in the line before the accident. Rodney Girlinghouse, senior site safety support manager for Zachry at Ineos' plant, led the investigation of Joe's accident and was not aware of anyone at Ineos who had actual knowledge of any gas in the line on which Joe was working that night.

The Elmgrens point to Pavlovsky's testimony that he has heard that sometimes de-coke gate valves leak even when they are new. Pavlovsky further clarified, however, that he has never personally witnessed a new valve leaking. The Elmgrens further suggest that Ineos knew of the hazardous condition of gas in the line because a similar explosion occurred a few months earlier while Zachry employees were repairing a flange on a pipe about one hundred feet from the Olefins #2 DDB 101B furnace. The Elmgrens note that a fire watch was required pursuant to the work permit. They point to testimony from Pierce that, after Joe's accident, Ineos requires a full nitrogen purge before changing valves. David Dworaczyk, unit engineer for Ineos, testified that the better practice is to perform the sniff test closer in time to when the work begins.

However, even viewing the summary judgment record in the light most favorable to the Elmgrens, none of this evidence indicates Ineos had actual knowledge of any valve allegedly leaking gas into the line that resulted in Joe's injuries at the time of the accident. The evidence does not show Pavlovsky was aware that any new gate valve at Ineos' plant was leaking. The evidence shows that there had previously been flammable gas in a line during a prior repair and that there are arguably better methods for clearing and checking a line for gas. *See Echartea*, 2011 WL 2684889, at *5 (finding no evidence of actual knowledge of roadway hole or rut causing plaintiff's injury despite evidence that location had been previously cleared of ruts). At most, Ineos may have had knowledge of a possibility that gas could exist in the line, but knowledge of a potential danger or condition is not enough. *See Bishop v. Nabisco, Inc.*, No. 14-03-00639-CV, 2004 WL 832916, at *3 (Tex. App.—Houston [14th Dist.] Apr. 20, 2004, no pet.) (mem. op.) ("Actual knowledge that the cover was dangerous is different than knowing that the cover was potentially dangerous.").

We conclude that the Elmgrens failed to meet their burden to raise a genuine fact issue on Ineos' actual knowledge pursuant to section 95.003(2). We overrule the Elmgrens' fourth issue. Because the Elmgrens failed in their burden regarding the second prong of section 95.003, we need not and do not address the first prong on control or their third issue, which addresses that prong. *See Bartee*, 2007 WL 2989614, at *4 & n.3. Therefore, the trial court did not err in granting Ineos' motion for summary judgment as to the Elmgrens' claims arising from the condition of the improvement Zachry and Joe were repairing. *See Echartea*, 2011 WL 2684889, at *5.

## C. The trial court erred in granting summary judgment pursuant to chapter 95 as to Pavlovsky because he did not conclusively prove that chapter 95 applies to him.

14

With respect to Pavlovsky, the Elmgrens argue that Pavlovsky did not conclusively prove that chapter 95 applies to claims against him. Pavlovsky did not submit any evidence that he was a property owner or contractor for purposes of chapter 95. Instead, Pavlovsky contends that he qualifies as such because he is an employee of Ineos, the property owner and contractor. We cannot agree. The plain language of section 95.002(1) states that chapter 95 applies to claims "against a property owner, contractor, or subcontractor"—not to claims against an "employee" of a property owner, contractor, or subcontractor. *See* Tex. Civ. Prac. & Rem. Code § 95.002(1). Indeed, the legislature could have included employees as a category of protected defendant but did not. *See id.* (listing claims for "personal injury, death, or property damage to . . . an employee of a contractor or subcontractor"). Pavlovsky relies on *Fisher v. Lee & Chang Partnership*, 16 S.W.3d 198 (Tex. App.—Houston [1st Dist.] 2000, pet. denied), for the proposition that "[a]gents, representatives, or employees of the property owner and/or contractor enjoy the benefits of Chapter 95." However, the precise holding of our sister court in *Fisher* does not reach so broadly as to cover all employees of property owners or contractors. In the specific situation where there was evidence that a particular individual was an agent and property manager for the property owner and "looked after the property," the *Fisher* court held the liability protection in "sec. 95.003 applies to property owners and also to their agents who oversee their properties." *Id.* at 202–03; *see Echartea*, 2011 WL 284889, at *3 n.1. In any event, Pavlovsky did not argue, much less conclusively prove, that he was Ineos' agent who oversees their property. We sustain the Elmgrens' first and second issues as to Pavlovsky.[4]

---

[4] We of course take no position at this time with regard to whether premises-liability claims against Pavlovsky otherwise could withstand summary disposition.

15

**D. The trial court erred in granting summary judgment on the Elmgrens' negligent-activity and negligent-undertaking claims.**

Both Ineos and Pavlovsky moved for traditional summary judgment on the ground that they were "not liable for the alleged personal injury sustained by [Joe] under . . . section 95.003; thus, summary judgment is appropriate as a matter of law." We construe this as a global summary judgment ground that encompasses all claims for personal injury pleaded by the Elmgrens. *See Nall v. Plunkett*, 404 S.W.3d 552, 556 (Tex. 2013) (reversing appellate court and construing summary judgment ground that did not expressly mention negligent undertaking as addressing such claim). Indeed, in their summary-judgment response, the Elmgrens argued that chapter 95 did not apply in this situation—i.e., their claims arising from Ineos' direct role in informing Zachry and Joe that "the system was safe to proceed." The trial court granted Ineos and Pavlovsky summary judgment, specifically finding that chapter 95 applies to the Elmgrens' personal injury claims.

On appeal, in addition to the argument that chapter 95 does not apply because Joe's injuries did not arise from the condition of the specific improvement that he was repairing, discussed and rejected above, the Elmgrens also assert that chapter 95 does not bar their negligence claims based on the alternative theories of negligent activity and negligent undertaking.[5]

We first consider what claims had been sufficiently pleaded by the Elmgrens at the time of summary judgment. The Elmgrens pleaded premises liability. They alleged that premises-owner Ineos failed with regard to its duty to provide "a safe place and conditions for [Joe] and others to work." As discussed, Chapter 95 appropriately governs these claims as to Ineos. *See* Tex. Civ. Prac. & Rem. Code

---

[5] At argument, counsel for the Elmgrens presented this court with proposed jury questions that particularly contemplated as to Ineos theories of negligent undertaking, general negligence, and premises liability pursuant to chapter 95.

§ 95.003; *Bishop*, 2004 WL 832916, at *3.  In addition, the Elmgrens alleged negligence by Ineos and Pavlovsky in various respects, including failures to timely inspect and to purge the line for gas.  The Elmgrens further alleged Ineos' particular responsibility with regard to clearing the line for Joe's protection.  At this stage, based on our review of the pleadings, which we construe liberally in the absence of special exceptions, *see Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982), and resolving any doubts against the motions for summary judgment, *see Echartea*, 2011 WL 2684889, at *2, we agree with the Elmgrens that their pleadings fairly encompass negligence claims potentially sounding in negligent activity and negligent undertaking.  *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000) (describing "fair notice" standard for pleading as whether opposing party can ascertain from the pleading basic nature of the controversy, even if improperly named); *Dodd v. Savino*, —S.W.3d—, No. 14-12-00555-CV, 2014 WL 242881, at *11 (Tex. App.—Houston [14th Dist.] Jan. 16, 2014, no. pet. h.) (substitute op.) ("The case law is clear that a petition is sufficient if a cause of action may reasonably be inferred from what is specifically stated in the petition, even if an element of the cause of action is not specifically alleged.") (internal quotation marks omitted).

Premises liability is a special form of negligence where the duty owed to the plaintiff depends on the plaintiff's status at the time of the incident.  *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).   A premises owner has a duty to use reasonable care to keep the premises under his control in a safe condition for business invitees, such as independent contractors.  *See Redinger*, 689 S.W.2d at 417.  Premises-liability claims are divided into two categories: (1) defects existing when an independent contractor enters the premises and (2) defects created by the independent contractor's work activity.  *Dow Chem. Co. v. Bright*, 89 S.W.3d 602,

17

606 (Tex. 2002) (citing *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999)).  With respect to pre-existing defects, a premises owner has a duty to inspect the premises and warn of defects the owner knows or should have known about.  *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997).  With respect to defects arising later, an owner generally has no duty unless it retains a right to or exercises some control over the manner in which the contractor's work is performed.  *See Bright*, 89 S.W.3d at 606; *Redinger*, 689 S.W.2d at 418.  As indicated, the effect of section 95.003 was to codify *Redinger*'s right-to-control requirement and to raise the knowledge requirement to actual knowledge of the dangerous condition.  *See Ellwood*, 214 S.W.3d at 700; *Dyall*, 152 S.W.3d at 699.

Whereas a premises-defect claim is based on the property itself being unsafe, a negligent-activity claim requires that the plaintiff's injury result from a contemporaneous activity itself rather than from a condition created on the premises by the activity.  *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *Timberwalk Apartments, Partners, Inc., v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); *Mayer*, 278 S.W.3d at 909.  Negligent activity is a general negligence cause of action and encompasses theories of malfeasance based on affirmative, contemporaneous conduct by the property owner that caused the injury, while premises liability encompasses theories of nonfeasance based on the owner's failure to take measures to make the property safe.  *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010).  The duty inquiry in a negligent-activity claim does not turn on whether a duty arose to take protective action based on special circumstances or the parties' relationship.  *See Custom Transit, L.P. v. Flatrolled Steel, Inc.*, 375 S.W.3d 337, 364 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).  "Instead, the duty

18

inquiry focuses on injuries caused by contemporaneous actions or omissions in [the owner's] conduct." *Id.*

For purposes of a negligent-undertaking claim, the "critical inquiry concerning the duty element" is "whether a defendant acted in a way that requires the imposition of a duty where one otherwise would not exist." *Nall*, 404 S.W.3d at 555. Such a duty may arise when a person particularly undertakes to provide services to another, either gratuitously or for compensation, including undertaking to make the premises safe for others. *See Custom Transit*, 375 S.W.3d at 361 (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000)). A jury presented with a negligent-undertaking claim should be instructed that the defendant was negligent if: (1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; and (3) either the plaintiff relied on the defendant's performance, or the defendant's performance increased the plaintiff's risk of harm. *Id.*

The Texas Supreme Court recognizes a distinction between the separate theories of premises liability and negligent activity. *Del Lago*, 307 S.W.3d at 775 ("As to landowners, we have recognized negligent-activity and premises-liability theories of liability."); *Shumake*, 199 S.W.3d at 284 ("We have rejected attempts to blur the distinction between these two claims."); *Keetch*, 845 S.W.2d at 264 ("We decline to eliminate all distinction between premises conditions and negligent activities."); *see Custom Transit*, 375 S.W.3d at 361. Although the terms "negligent activity" and "negligent undertaking" are sometimes used interchangeably, a negligent-undertaking theory is separate and distinct from a negligent activity theory. *See Custom Transit*, 375 S.W.3d at 363. Moreover, as with negligent activity, the Texas Supreme Court recognizes that negligent

19

undertaking and premises liability, although similar in that the plaintiff seeks to impose a duty to take protective action based on special circumstances or the parties' relationship, involve two different theories of recovery. *See Nall*, 404 S.W.3d at 555; *Wilson v. Tex. Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex. 1999) (per curiam); *Custom Transit*, 375 S.W.3d at 361 (citing *Torrington*, 46 S.W.3d at 838).

Next, we must determine whether chapter 95 applies to automatically bar all such negligence claims. In other words, whether chapter 95 as a matter of law provides the Elmgrens' exclusive remedy against Ineos here. We conclude that it does not. In *Dyall*, albeit in dicta, our en banc court indicated that the intent of chapter 95 was not to bar all negligence claims against property owners. *See* 152 S.W.3d at 708. There, we considered chapter 95's statement of legislative intent,[6] found it to be entirely consistent with the statute's plain meaning, and specifically indicated that chapter 95 would not preclude recovery in the following situations:

---

[6] Representative Robert Junell, sponsor of the bill, stated that it was the authors' intent that chapter 95 "does not apply nor raise the burden of proof in situations where a property owner is negligent, separate and apart from exercising or retaining control over the manner in which the work is performed in a contract to construct, repair, renovate, or modify an improvement to real property." *Dyall*, 152 S.W.3d at 708 (citing H.J. of Tex., 74th Leg., R.S. 2611–12 (1995)). Representative Junell offered two examples:

> Example: Let's say there is a concrete company supplying concrete to a plant and because of premise owner's negligence (such as failing to properly maintain their pipelines, vessels or pressures), there is an explosion destroying the concrete truck and injuring the driver. Nothing in this Chapter would raise the burden of proof on the property owners negligence for recovery of the damages related to the truck or person.

> Example: Likewise, if we have a maintenance contractor who gets a contract to perform work at the plant, and the property owner informs the contractor that the lines are clear and ready for welding, when in fact they are not, due to the property owner's negligence, and an employee of the maintenance contractor is injured by the release of chemicals. Nothing in this chapter would change the burden of proof or the damages recoverable.

*Id.* (citing same).

20

"if [independent contractor employee] had been injured by an unrelated explosion of the pine bleaching plant due to [mill owner's] negligence" and "if [mill owner] had negligently told [independent contractor employee] that the pipe was empty, and [employee] had been injured due to his reliance on that statement," then "the statute would not preclude recovery." *Id.* (concluding, however, that neither scenario was at issue where mill owner specifically told independent contractor employees pipe was not empty). Until now, this court has not been directly presented with a case where the plaintiff alleged negligence claims against a property owner arguably falling within a situation as described in *Dyall*. *Cf. Vanderbeek*, 246 S.W.3d at 348–49, 351 (negligence claims covered by chapter 95 where plaintiff had alleged dangerous condition due to hospital's negligence prior to plaintiff's work, but where no allegation of contemporaneous action or omission by hospital or additional undertaking to protect plaintiff by hospital).[7]

Recently, in *Oncor Electric Delivery Co., LLC v. Murillo*, —S.W.3d—, 2014 WL 1056471 (Tex. App.—Houston [1st Dist.] Mar. 18, 2014, no pet. h.) (op. on reh'g), our sister court recognized that claims of negligent activity survive chapter 95. There, an employee of a demolition contractor was electrocuted at a demolition site. Oncor was the easement holder and electricity provider to the site that failed to de-energize the transformer at issue. The jury found Oncor liable for general negligence and assessed damages. The court rejected Oncor's jury-charge challenge that the only viable claim against it and the plaintiff's exclusive remedy was for premises liability under chapter 95 arising from the failure to provide a safe workplace. *Id.* at *8, *19.

---

[7] The Dallas court of appeals declined to follow our dicta from *Dyall* in *Dow Chemical Co. v. Abutahoun*, 395 S.W.3d 335, 347 n.5 (Tex. App.—Dallas 2013, pet. filed).

21

In doing so, the *Oncor* court noted the Texas Supreme Court's consistent recognition "that negligent-activity claims and premises-defect claims involve two independent theories of recovery . . . . although '[t]he lines between negligent activity and premises liability are sometimes unclear,' there is a recognized distinction between the two theories." *Id.* at \*8 (quoting *Del Lago*, 307 S.W.3d at 776). "Premises defect and negligent activity are two separate theories." *Id.* at \*13. As the *Oncor* court explained, just because Oncor also may have owed "the duty of a property owner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by some condition on the premises," where Oncor performed its own activity on the property, "it had a duty to use ordinary care in the performance of that activity so that its activity would not proximately cause a foreseeable injury to workers on the site." *Id.* at \*13 (where Oncor performed activity in disconnecting electricity or otherwise controlling flow of electricity to property to permit safe demolition, it owed duty to "workers on the site quite apart from the general duty it owed as the owner of the electricity easement on the property"). The *Oncor* court also explained that a plaintiff may proceed on negligent activity, as opposed to premises liability:

> [W]here [the plaintiff] was not injured because a condition occurred as a result of equipment failure, act of God, third party interference, or the non-contemporaneous act of the easement owner—but by the negligent acts of several defendants, including [the easement owner] . . . .

*Id.* at \*10 (discussing *Tex. Dep't of Transp. v. Ramming*, 861 S.W.2d 460 (Tex. App.—Houston [14th Dist.] 1993, writ denied)). Ultimately, the *Oncor* court concluded that the negligent activity was "Oncor's failing to disconnect one of the cables it had been charged with disconnecting and, instead, leaving live electricity flowing through that cable to the demolition site during the on-going demolition,

salvage, and utility removal process" and the plaintiff's injuries were "attributable to an ongoing activity [of] the premises owner." *Id.* at \*10–11.

In light of the Texas Supreme Court's continued recognition of the distinct nature of premises-liability, negligent-activity, and negligent-undertaking theories of liability, and in light of *Dyall* and *Oncor*, we conclude that chapter 95 defeats a premises-liability claim if the statutory requisites are satisfied but does not as a matter of law reach distinct claims for negligent activity and negligent undertaking.

Therefore, in these circumstances where the Elmgrens' petition fairly included negligent-activity and negligent-undertaking theories of liability, the trial court erred in granting summary judgment insofar as its order operated to grant summary judgment pursuant to chapter 95 on the Elmgrens' claims for negligent activity and negligent undertaking. We of course express no opinion as to whether the Elmgrens ultimately could establish any negligence claims (aside from premises-liability claims) and whether Ineos and Pavlovsky ultimately could be liable for any breaches of duty, if owed.

**E. The trial court did not abuse its discretion in denying the Elmgrens' motion to compel.**

In their fifth issue, the Elmgrens argue that the trial court erred in denying their motion to compel responses to their 8th request for production, where they requested the names and contact information for all process engineers on duty at Ineos' plant within three days of Joe's accident. Ineos and Pavlovsky had objected on grounds that the request was overly broad, unduly burdensome, vague, and ambiguous "as to what is meant by process engineers." In their motion, the Elmgrens pointed to Girlinghouse's testimony that, during Zachry's investigation, "an Ineos engineer" who worked during the day gave Girlinghouse information regarding leaking valves as the cause of the accident. Girlinghouse did not write

23

any names down and could not describe or remember who told him that. Girlinghouse used the term "process engineer" when he responds he is not a process engineer after being asked to explain "how this gas could have gotten in the system." The trial court denied the motion to compel.

Thereafter, the Elmgrens took the deposition of Ineos' corporate representative Randy Kay. The Elmgrens again moved to compel the identity of the process engineers,[8] pointing to Kay's testimony regarding the term "process engineers" and his identification of Dworaczyk as one of two process engineers who may have been assigned to Olefins #2. Kay could not recall the name of the other process engineer; his testimony indicated that one process engineer was assigned to Olefins #1 and one process engineer was assigned to Olefins #2. The Elmgrens then took Dworaczyk's deposition one day before the summary judgment hearing. Dworaczyk testified that "process engineer" is a "general term" and that at the time he served as the "unit engineer" for Olefins #2. The Elmgrens included excerpts from Dworaczyk's deposition in their motion to reconsider and to allow new summary judgment evidence. The record indicates that the trial court considered the Dworaczyk excerpts when denying the Elmgrens' motion to reconsider summary judgment.

We review a trial court's ruling on a motion to compel discovery under an abuse-of-discretion standard. *See Johnson v. Davis*, 178 S.W.3d 230, 242 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Trial courts have broad discretion in matters of discovery. *See id.* We should reverse a trial court's ruling on a motion to compel only when the court acts in an arbitrary and unreasonable manner, without reference to any guiding principles. *Shanley v. First Horizon Home Loan Corp.*, No. 14-07-01023-CV, 2009 WL 4573582, at *3 (Tex. App.—

---

[8] The record does not disclose a ruling on the Elmgrens' second motion to compel.

24

Houston [14th Dist.] Dec. 8, 2009, no pet.) (mem. op.).

The Elmgrens fail to show how the trial court abused its discretion by denying their first motion to compel or by failing to rule on, or implicitly denying,[9] their second motion. The Elmgrens discovered who served as the Olefins #2 "process engineer" at the time of Joe's accident, deposed Dworaczyk, and utilized his testimony to defend against summary judgment. We conclude that the trial court did not abuse its discretion. *See id.* at \*4.

We overrule the Elmgrens' fifth issue.

### IV. CONCLUSION

Based on the foregoing, we affirm in part and reverse and remand in part the trial court's summary judgment. With regard to the Elmgrens' negligence claims based on a premises-liability theory, we (1) affirm the trial court's granting of summary judgment pursuant to chapter 95 as to Ineos and (2) reverse the court's granting of summary judgment pursuant to chapter 95 as to Pavlovsky. With regard to the Elmgrens' negligence claims based on negligent-activity and negligent-undertaking theories, we reverse the trial court's granting of summary judgment. In all other respects, we affirm the summary judgment. We remand the case for proceedings consistent with this opinion.

/s/ Marc W. Brown
Justice

Panel consists of Justices Boyce, Christopher, and Brown.

---

[9] *See Shanley*, 2009 WL 4573582, at \*3 n.4 (finding it arguable that rendition of summary judgment in favor of defendants implicitly overruled plaintiffs' motion to compel discovery and thus preserved error).