# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50821
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 25, 2016

Lyle W. Cayce
Clerk

ERIC Y. ROSE,

      Plaintiff - Appellant

v.

CALLON PETROLEUM COMPANY,

      Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:14-CV-129

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

      Plaintiff–Appellant Eric Rose was assigned by his employer, Cactus Drilling Company, to work on Defendant–Appellee Callon Petroleum Company's oil well. Rose fell while raking oilfield cuttings into a dumpster tote, injured his back, and later filed the instant negligence action against Callon. The district court held that Chapter 95 of the Texas Civil Practice and

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-50821

Remedies Code barred Rose's claim against Callon. We agree and, accordingly, AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant–Appellee Callon Petroleum Company (Callon) operates oil and gas wells throughout the Permian Basin, and, in February 2012, Callon hired Cactus Drilling Company, L.L.C., (Cactus) as an independent contractor to drill an oil and gas well (Rig 156) in Reagan County, Texas. Plaintiff–Appellant Eric Rose worked for Cactus, and he was assigned to Rig 156 in 2013. On April 30, 2013, Rose began his shift at 5:30 AM with a safety meeting led by Jeff Montgomery, the senior Cactus employee at Rig 156. Rose was then informed by Brent St. Clair—Rose's supervisor and the "driller" for Cactus— that one of his tasks for the day would be to rake drill cuttings into a "dumpster tote."[1]

Each dumpster tote is covered by large metal lids, which rest on rollers so that they may be spread open from the middle, allowing drill cuttings to fall into the body of the tote. The dumpster totes include chains and hooks that may be used to cinch down the lids, immobilizing them. Around 10:00 AM on April 30, Rose was standing on the lid of a dumpster tote, raking drill cuttings into the tote, when the lid rolled, causing Rose to fall onto his back. After taking approximately 20 minutes to recover and gather himself, Rose returned to work. Rose reported his back injury to Montgomery at the end of his shift and spoke to a nurse on the phone, stating that he was experiencing mild discomfort but that he could continue working. Rose worked a full 12-hour shift the next day and then departed for his home in Louisiana for a previously scheduled two-week break. While at home, Cactus referred Rose to a physician

---

[1] A dumpster tote is an approximately 20-foot-long container that is placed below a slide running from the oil rig. Oilfield cuttings leave the slide and fall into the dumpster tote for later transportation away from the job site.

No. 15-50821

who, based on a physical examination, x-rays, and an MRI, concluded that Rose had a cervical strain but could return to work with some restrictions on the amount of weight he could lift. Rose returned to work on May 15, 2013, and worked until May 22, 2013, when he left to visit a chiropractor. Since that day, Rose has been on a leave of absence from Cactus and has undergone injection therapy and surgery.

Rose filed suit against Callon in Texas state court on June 23, 2014, asserting a negligence claim under Texas law. Callon removed this action to federal court on December 18, 2014, asserting diversity jurisdiction under 28 U.S.C. § 1332. Callon then filed a motion for summary judgment, arguing that Rose's negligence claim was barred by Chapter 95 of the Texas Civil Practice and Remedies Code. The district court agreed with Callon and granted its motion for summary judgment on July 15, 2015. Rose timely appealed.

## II. STANDARD OF REVIEW

This court "review[s] a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers*, 755 F.3d at 350 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[T]his court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

## III. NEGLIGENCE AND CHAPTER 95

Chapter 95 of the Texas Civil Practice and Remedies Code governs a

3

property owner's liability to independent contractors and their employees. This statute applies to a claim:

> (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and
> (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

Tex. Civ. Prac. & Rem. Code Ann. § 95.002. The Supreme Court of Texas has explained that Chapter 95 is broad in scope, noting that "the Legislature intended for Chapter 95 to apply to all negligence claims that arise from either a premises defect or the negligent activity of a property owner or its employees." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 50 (Tex. 2015).

Neither party disputes the district court's finding that Callon was a property owner within the meaning of the statute "because [Callon] is the mineral lease owner of the land where Rig 156 is located." The district court also found that Rose, who was an employee of the independent contractor Cactus, was "construct[ing], repair[ing], renovat[ing], or modify[ing] an improvement to real property," Tex. Civ. Prac. & Rem. Code Ann. § 95.002, when he was raking drill cuttings into the dumpster tote and that, accordingly, Chapter 95 applied to Rose's claim against Callon. Rose challenges the district court's finding that Chapter 95 applies, arguing that (1) the dumpster tote is not an improvement to real property and (2) raking oilfield cuttings into the dumpster tote is not construction, repair, renovation, or modification, of an improvement to real property. We find neither argument persuasive and agree with the district court that Chapter 95 applies to Rose's claim.

In making his first argument, Rose misconstrues Texas law. The fact that the dumpster tote itself is not an improvement to real property is irrelevant. The employee of a contractor need not be injured by the

4

No. 15-50821

improvement to the real property that is the focus of his work; rather, for Chapter 95 to apply, the employee need only be engaged in work on the improvement. *See Fisher v. Lee & Chang P'ship*, 16 S.W.3d 198, 201 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) ("[N]othing in the legislative history indicates the statute applies only if the contractor was injured by the very object he was repairing."). Here, the dumpster tote was simply a tool to facilitate Rose's work on the oil well, which is an improvement to real property under Texas law. *Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 85 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (noting that it is "settled law" that "mineral wells constitute improvements to real property"); *accord Fox v. Thoreson*, 398 S.W.2d 88, 89 (Tex. 1966). And Texas courts have consistently held that, when an employee is injured by a tool he is using to work on an improvement to real property, Chapter 95 applies to his subsequent claims against the property owner. *See, e.g.*, *Fisher*, 16 S.W.3d at 202–03 (concluding that Chapter 95 applied when a contractor was injured following a fall from a ladder while working on a roof-mounted air conditioning unit); *Phillips v. Dow Chem. Co.*, 186 S.W.3d 121, 131–32 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (finding that Chapter 95 applied when the plaintiff fell from scaffolding erected around a ship in dry dock). The district court therefore did not err in rejecting this argument.

The district court similarly committed no error in rejecting Rose's second argument—that raking oilfield cuttings was not construction, repair, renovation, or modification, of an improvement to real property. This court has previously noted that "Texas courts have found that activity facilitating a well's performance is construction, renovation, or modification." *Credeur v. MJ Oil, Inc.*, 123 F. App'x. 585, 588 (5th Cir. 2004) (per curiam) (unpublished) (citing *Francis*, 130 S.W.3d at 85). Because raking drill cuttings facilitated the construction of the oil well, we agree with the district court that Rose was

No. 15-50821

engaged in the construction of an improvement to real property when he was injured and that Chapter 95 applies to his claim against Callon.

Given that Chapter 95 applies to his negligence claim against Callon, we next turn to whether Rose can succeed on that claim. Under Chapter 95, a property owner is only liable for the personal injury of an employee of an independent contractor if the property owner (1) "exercises or retains some control over the manner in which the work is performed" and (2) "had actual knowledge of the danger or condition resulting in the personal injury . . . and failed to adequately warn." Tex. Civ. Prac. & Rem. Code Ann. § 95.003. In granting summary judgment, the district court concluded that Callon did not have actual knowledge of the dangerous condition that caused Rose's injury.[2] We agree and therefore conclude that Chapter 95 bars Rose's negligence claim against Callon and that the district court did not err in granting summary judgment to Callon.[3]

Rose argues that the district court improperly concluded that Callon was required to have actual knowledge of the specific loose lid that caused Rose to fall. Instead, Rose argues that Callon need only have known of the danger posed by loose lids on dumpster totes. In advancing this argument, Rose misunderstands the requirements of "actual knowledge" under Texas law, as "knowledge that an activity is potentially dangerous is not sufficient to satisfy the second prong of Section 95.003—actual knowledge of the danger is

---

[2] With respect to the control prong, the district court concluded that Rose had demonstrated a genuine dispute of material fact as to whether Callon exercised control over Cactus and Rose.

[3] Because Callon must satisfy both the control and actual knowledge prongs to succeed on his claim against Callon and because we agree with the district court that Callon cannot satisfy the actual knowledge prong, we need not, and do not, address whether the district court erred in its conclusion as to the control prong. *See Ellwood Texas Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("An owner may be aware of the danger, but exercise no control, or he may exercise control and have no actual knowledge of the danger; in either instance, the owner is statutorily shielded from liability.").

required." *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 709 n.18 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). "Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time." *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008). "Actual knowledge of a dangerous condition is what a person actually knows, as distinguished from constructive knowledge, or what a person should have known." *Elmgren v. Ineos USA, LLC*, 431 S.W.3d 657, 665 (Tex.App.—Houston [14th Dist.] 2014, pet. granted).

Rose argues that there was ample evidence that Callon was aware of the danger posed by loose lids and that Callon failed to confirm that the lids were properly secured or warn Rose of the dangers of these lids. However, under Texas law, the failure to inspect an object for dangers—even if that failure is negligent—is not sufficient to show actual knowledge of a dangerous condition. *See Kelly v. LIN Television of Tex., L.P.*, 27 S.W.3d 564, 572 (Tex. App.— Eastland 2000, pet. denied) (concluding that plaintiffs "introduced no evidence" of actual knowledge that the condition of a television tower was dangerous and, at best, only showed that the tower owner "was negligent in not having the tower inspected regularly for stress fractures and metal fatigue"). Although Rose introduced evidence showing that Callon knew that the lids of the dumpster totes should be secured for safe operation, he did not introduce any evidence showing that Callon or any of its employees actually knew that the lid of the dumpster tote on which Rose was working was not properly secured. Thus, the district court correctly concluded that Rose could not show that Callon had actual knowledge of the loose lid that caused Rose's injury. Because Rose could not show that Callon had actual knowledge of the loose lid, Chapter

7

No. 15-50821

95 bars his negligence claim against Callon. Accordingly, we hold that the district court committed no error in granting summary judgment to Callon.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.