

ACCEPTED
14-14-00158-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
5/28/2015 3:54:37 PM
CHRISTOPHER PRINE
CLERK

R. RUSSELL HOLLENBECK
hollenbeck@wrightclose.com

Board Certified Civil Appellate Law
Texas Board of Legal Specialization

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
5/28/2015 3:54:37 PM
CHRISTOPHER A. PRINE
Clerk

May 28, 2015

Hon. Christopher A. Prine, Clerk
Fourteenth Court of Appeals
301 Fannin, Suite 245
Houston, Texas 77002

***Via Electronic Submission***

Re:   Cause No. 14-14-00158-CV
      *Oiltanking Houston, L.P., et al. v. Alberto Delgado, et al.*

Dear Mr. Prine:

The undersigned is counsel for the Appellants, Oiltanking Houston, L.P., Oiltanking Holding Americas, Inc., Oiltanking Partners, L.P., and Oiltanking North America, L.L.C. (collectively, "Oiltanking"), in this proceeding. Oiltanking respectfully requests that you forward this letter brief to Justices Boyce, McCally, and Donovan. A copy of this letter is being served on counsel for the Appellees contemporaneously with its filing with the Court.

Oiltanking submits this post-submission letter to draw the Court's attention to a recent decision by the Texas Supreme Court that impacts the consideration of the issues raised at the parties' recent oral argument.

## I.   Chapter 95 applies to all negligence claims, including negligent activity and negligent undertaking claims, when its prerequisites are satisfied.

At the parties' oral argument, the members of the panel asked counsel for both sides, "What about *Elmgren*?" (paraphrasing). The panel seemed particularly concerned about the holdings of that case concerning the scope of Chapter 95's application to claims sounding in negligence. *See Elmgren v. Ineos USA, LLC*, 431 S.W.3d 657, 671 (Tex. App—Houston [14th Dist.] 2014, pet. filed).

In *Elmgren*, this Court held, in part, as follows: "[W]e conclude that Chapter 95 defeats a premises-liability claim if the statutory requisites are satisfied but does not as a matter of law reach distinct claims for negligent activity and negligent undertaking." *Id.*

The Texas Supreme Court's very recent decision in *Abutahoun v. Dow Chemical Company*, __ S.W.3d __, 2015 WL 2147979 (Tex. May 8, 2015), answers the panel's question by effectively overruling *Elmgren* in this regard. (*See* attached.) In *Abutahoun*, the Court held as follows:

> The sole issue in this appeal is whether Chapter 95 applies to an independent contractor's negligence claims against a property owner when the claims are based on injuries arising out of the property owner's negligent activities and not the independent contractor's own work. . . . Applying the plain language of the statute, ***we hold that Chapter 95 applies to all independent contractor claims for damages caused by a property owner's negligence when the requirements of section 95.002(2) are satisfied***.
>
> * * *
>
> As we have explained, "negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." Despite their differences, both claims are a species of negligence. While it is true that "[w]e have rejected attempts to blur the distinction between these two claims, it is nonetheless an accurate statement that ***both types of claims fall within the common meaning of the term "negligence"*** that appears, undefined in section 95.001(1).

*Id*. at *1, *7 (citations omitted) (emphasis added).

As a result, the Court held that "[w]e can only conclude that the Legislature intended for Chapter 95 to apply to ***all negligence claims*** that arise from either a premises defect or the negligent activity of a property owner or its employees . . . ." *Id*. at *6 (emphasis added).

2

At oral argument, counsel for Appellees all but conceded the absence of any evidence supporting a negligent activity theory of liability. Given this recent decision from the Texas Supreme Court, as well as the fact that Appellees' claims indisputably arise from a condition of the improvement on which they were working at the time of this accident, it is clear that whether this Court concludes Appellees' theories of liability arise from negligent activity, negligent undertaking, or a condition of the premises, Appellees were required to satisfy the elements of Chapter 95 to recover.

## II. There was no evidence of control or actual knowledge.

Chapter 95 requires proof that (i) the property owner exercised or retained some control over the manner in which the independent contractor performed its work, and (ii) the property owner had actual knowledge of the danger or condition of the premises that resulted in the independent contractor's injuries or death and failed to adequately warn the contractor. *See* TEX. CIV. PRAC. & REM. CODE § 95.003. Appellees failed to satisfy the elements of the statute.

This Court has previously held that proving a property owner exercised control over the means, methods, or details of an independent contractor's work requires more than showing a right to order work to start or stop or to inspect progress and receive reports. *See Johnston v. Oiltanking Houston, L.P.*, 367 S.W.3d 412, 417 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Nor is it enough to show the defendant controlled one aspect of an independent contractor's activities if the accident arose from another. *Id.* Finally, the right to schedule the timing of work, coordinate the activities of contractors, and prescribe alterations or deviations in the work is also not sufficient to impose liability on a premises owner. *Id.* at 419 ("Oiltanking must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability."). As shown in Oiltanking's briefing, the evidence at trial did not rise to the level of control required to establish liability under Chapter 95.

How this accident occurred was also a matter of dispute at trial. But there was no evidence that anyone at Oiltanking possessed actual knowledge that

3

hazardous fumes or vapors were leaking around the plumber's plug into the work area (if, in fact, they were) before this accident occurred. And as this Court has previously explained, mere constructive knowledge is not sufficient to satisfy the requirements of Chapter 95. *See, e.g., Elmgren*, 431 S.W.3d at 666 (holding defendant not liable under Chapter 95 where no evidence showed actual knowledge that valve at issue was leaking); *Bishop v. Nabisco, Inc.*, 2004 WL 832916 at *3 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (mem. op.) ("Actual knowledge that the cover was dangerous is different than knowing that the cover was potentially dangerous."). There was no evidence at trial that Oiltanking possessed the actual knowledge necessary to establish liability under Chapter 95.

For these and the others reasons raised in its briefing, Oiltanking respectfully requests that the Court reverse the trial court's judgment.

Respectfully submitted,

/s/ *R. Russell Hollenbeck*
WRIGHT & CLOSE, LLP
State Bar No. 00790901

RRH:jcr

cc:    Peter M. Kelly                                    *Via Electronic Service*
       KELLY, DURHAM & PITTARD, LLP
       1005 Heights Blvd.
       Houston, Texas 77008

       Robert S. Kwok                                    *Via Electronic Service*
       KWOK DANIEL LTD., L.L.P.
       6588 Corporate Drive, Suite 300
       Houston, Texas 77036

       *Attorneys for Appellees*

2015 WL 2147979
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION IN THE
PERMANENT LAW REPORTS. UNTIL RELEASED,
IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Supreme Court of Texas.

Magdalena Adrienna Abutahoun, Individually and
as Personal Representative of the Heirs and Estate
of Robert Wayne Henderson, Deceased, and Tanya
Elaine Henderson, Individually in Her Own Right
and as Next Friend of Z.Z.H., a Minor, Petitioners,
v.
The Dow Chemical Company, Respondent

NO. 13–0175    |    Argued January 14,
2015    |    OPINION DELIVERED: May 8, 2015

**Synopsis**
**Background:** Worker's estate sued property owner under theories of premises liability, negligence, gross negligence, and conspiracy, alleging owner failed to keep its premises in reasonably safe condition while worker was performing work for independent contractor, and failed to warn worker of "dangerous ongoing activities, namely the use, application, and clean-up and removal of asbestos-containing products." The 160th Judicial District Court, Jim Jordan, J., entered judgment, on jury verdict, for estate. The Court of Appeals reversed, 395 S.W.3d 335. Estate's petition for review was granted.

**[Holding:]** The Supreme Court, Green, J., held that statute precluding liability of property owners for injuries suffered by contractors' employees from an owner's failure to provide safe workplace applied to estate's claims.

Affirmed.

West Headnotes (10)

**[1]     Negligence**

　　Safe Workplace Laws

Independent contractor's employee was not injured by an improvement separate from improvement that was object of his work in removing asbestos insulation and installing new insulation on property owner's pipe system, and thus, statute precluding liability of property owners for injuries suffered by contractors or their employees from owner's failure to provide a safe workplace applied to negligence claim asserted by employee's estate, which in turn meant that estate was required to carry two-pronged evidentiary burden, under the statute, to prove that owner exercised or retained some control over the manner in which the work was performed and that owner had actual knowledge of the danger or condition resulting in worker's death and failed to adequately warn. V.T.C.A., Civil Practice & Remedies Code § 95.001 et seq.

Cases that cite this headnote

**[2]     Statutes**

　　Language

When construing a statute, courts begin with its language.

Cases that cite this headnote

**[3]     Appeal and Error**

　　Cases Triable in Appellate Court

Appellate court reviews statutory construction de novo.

Cases that cite this headnote

**[4]     Statutes**

　　Plain Language; Plain, Ordinary, or Common Meaning

Courts look to the plain meaning of the words in a statute as an expression of legislative intent.

Cases that cite this headnote

**[5]     Statutes**

　　Plain language; plain, ordinary, common, or literal meaning

**Statutes**

👉 Extrinsic Aids to Construction

If the statute is clear and unambiguous, courts must read the language according to its common meaning without resort to rules of construction or extrinsic aids.

Cases that cite this headnote

**[6]**　**Statutes**

👉 Plain Language; Plain, Ordinary, or Common Meaning

**Statutes**

👉 Defined terms; definitional provisions

**Statutes**

👉 Context

**Statutes**

👉 Relation to plain, literal, or clear meaning; ambiguity

A court initially limits its statutory review to the plain meaning of the text as the sole expression of legislative intent, unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results.

Cases that cite this headnote

**[7]**　**Statutes**

👉 Titles, headings, and captions

When the plain meaning of a statute controls, the title of the section carries no weight, as a heading does not limit or expand the meaning of a statute.

Cases that cite this headnote

**[8]**　**Statutes**

👉 Absence of Ambiguity; Application of Clear or Unambiguous Statute or Language

**Statutes**

👉 Extrinsic Aids to Construction

When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language.

Cases that cite this headnote

**[9]**　**Statutes**

👉 Plain, literal, or clear meaning of statute; ambiguity

Because abrogation is disfavored, courts examine the statute's plain language for the Legislature's clear intention to replace a common law remedy with a statutory remedy, and the court declines to construe statutes to deprive citizens of common-law rights unless the Legislature clearly expressed that intent.

Cases that cite this headnote

**[10]**　**Negligence**

👉 Safe Workplace Laws

When a claim does not arise from a condition or use of an improvement to real property where the contractor or subcontractor modifies the improvement, the statute precluding liability of property owners for injuries suffered by contractors or their employees from owner's failure to provide a safe workplace does not apply and an independent contractor can recover for common law negligence. Tex. Civ. Prac. & Rem. Code Ann. § 95.002(2).

Cases that cite this headnote

ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

**Attorneys and Law Firms**

Erin Marie Wiegand, Fisher, Boyd, Johnson & Huguenard, LLP, Houston, Justin Joseph Presnal, Fisher, Boyd, Johnson & Huguenard, LLP, Houston, Michael E. Shelton, The Shelton Law Firm, Houston, for Amicus Curiae Dallas Building Trades Council.

William V. Dorsaneo III, SMU School of Law, Dallas, for Amicus Curiae William V. Dorsaneo III.

Christine Tamer, Denyse Ronan Clancy, John Lacoste Langdoc, Baron & Budd, P.C., Dallas, for Petitioner Magdalena Adrienna Abutahoun.

Amy Pharr Hefley, Macey Reasoner Stoke, Matthew Eagan, Stephen G. Tipps, Baker Botts LLP, Houston, David P. Herrick, Herrick & Associates PC, Dallas, for Respondent The Dow Chemical Company.

**Opinion**

JUSTICE GREEN delivered the opinion of the Court.

**\*1** In this case of first impression, we must interpret Chapter 95 of the Texas Civil Practice and Remedies Code, which relates to limitations on a property owner's liability for injury, death, or property damage to an independent contractor. *See* TEX. CIV. PRAC. & REM. CODEE ch. 95. The underlying legal dispute began when a pipeline insulation worker contracted mesothelioma and sued a chemical company alleging that he was exposed to asbestos-containing products while working as an independent contractor at the chemical company's facility. The sole issue in this appeal is whether Chapter 95 applies to an independent contractor's negligence claims against a property owner when the claims are based on injuries arising out of the property owner's negligent activities and not the independent contractor's own work. The court of appeals held that "[t]he plain meaning of the text of Chapter 95 does not preclude its applicability where a claim is based upon negligent actions of the premises owner." 395 S.W.3d 335, 347 (Tex.App.–Dallas 2013). Applying the plain meaning of the statute, we hold that Chapter 95 applies to all independent contractor claims for damages caused by a property owner's negligence when the requirements of section 95.002(2) are satisfied. We affirm the court of appeals' judgment.

## I. Factual and Procedural Background

The Dow Chemical Company contracted with Win–Way Industries to install insulation on a system of pipelines at Dow's facility in Freeport, Texas. Robert Henderson was a Win–Way employee, and he assisted with the insulation work at Dow's Freeport facility from 1967 to 1968. Dow's Freeport facility contained thousands of pipes in a pipeline system that ran throughout the facility. The pipes, which Robert Henderson helped insulate with a material containing asbestos, transported steam and various types of acid. While working for Win–Way on the asbestos-insulated pipeline system at Dow's Freeport facility, Robert Henderson was allegedly exposed to asbestos dust by Dow employees who were installing, sawing, and removing asbestos insulation

nearby. He was also allegedly exposed to asbestos dust as a result of his own direct contact with the insulation products. At trial, a Dow employee who worked on the same asbestos-insulated pipeline system as Robert Henderson testified, "[y]ou name it, we sawed it," and also testified that individuals within twenty yards of him were "in the [asbestos] dust area." In a pre-trial deposition, Robert Henderson testified that he was doing the same kind of work as Dow employees on the asbestos-insulated pipeline system, and he testified about the frequency, regularity, and proximity of the exposure he received as a bystander to Dow employees performing similar insulation work nearby. Robert Henderson testified that, while at Dow's Freeport facility, he worked on the pipeline system two to three days per week for four to five hours per day, usually working within five to ten feet of Dow employees who were working with asbestos-based insulation.

**\*2** Eventually, Robert Henderson was diagnosed with mesothelioma, and he and his wife, Tanya, sued Dow and over a dozen other defendants, alleging under various negligence and product liability theories that the defendants were responsible for Robert Henderson's injuries due to asbestos exposure. Upon Robert Henderson's death, the petition was amended to allow his adult daughter, Magdalena Adrienna Abutahoun, and his minor daughter, through Tanya Henderson as next friend, to join the lawsuit as wrongful death heirs (collectively, the Hendersons). The lawsuit was originally filed in the 160th District Court in Dallas County but was transferred to the asbestos multi-district litigation (MDL) pretrial court in Harris County for pretrial proceedings. *See* TEX. GOV'T CODE § 74.162.

Dow moved for summary judgment in the MDL pretrial court, arguing that Chapter 95 of the Texas Civil Practice and Remedies Code applied to the Hendersons' negligence claims against Dow and precluded any recovery. The MDL pretrial court granted Dow summary judgment in part and dismissed "all claims against [Dow] in which Plaintiffs allege that Decedent Robert Wayne Henderson ... was injured by exposure to respirable asbestos as the result of the activities of Decedent and/or the activities of other employees of Decedent's employer on any premises of [Dow]." The MDL pretrial court denied Dow's motion for summary judgment "as to all of Plaintiffs' other claims against [Dow], including Plaintiffs' claims that Decedent was injured by virtue of the activities of Dow Employees." Accordingly, although Robert Henderson was allegedly exposed to asbestos both directly from his own insulation work and as a bystander to the

insulation work of Dow employees, only the Hendersons' claims predicated on the negligence of Dow's employees were allowed to proceed before the jury.

The MDL pretrial court remanded the case to the original trial court, and the Hendersons' remaining claims based on Dow's employees' contemporaneously negligent activities were tried to a jury. The Hendersons' claims against all other defendants were resolved before the case was submitted to the jury. At the conclusion of trial, a general negligence question was submitted that instructed the jury to consider, with respect to Dow, "only the activities of [Dow] employees at Dow ... facilities." [1] The jury returned a verdict in which it found that Dow's negligence proximately caused Robert Henderson's injuries, and that Dow was 30% responsible for causing Robert Henderson's injuries. Based on the jury verdict and several adjustments, the trial court rendered judgment against Dow for $2.64 million plus interest and court costs.

Dow appealed the verdict and argued that Chapter 95 does not distinguish between a property owner's liability for exposure caused by the activities of contractors and their employees and exposure that the property owner's own employees' activities caused. 395 S.W.3d at 338–39. Further, Dow argued that Chapter 95 applied to bar all of the Hendersons' negligence claims because the Hendersons did not establish that Dow had both control over Robert Henderson's work and actual knowledge of the dangers of asbestos exposure as Chapter 95 requires. *See id.* at 339; *see also* TEX. CIV. PRAC. & REM. CODEE § 95.003. The Hendersons argued that Dow could not "avail itself of the heightened protections afforded by Chapter 95" because their claims against Dow were "based solely upon the negligent activities of Dow employees, and not from injury arising from the condition or use of an improvement of real property by [Robert] Henderson." 395 S.W.3d at 342.

**\*3** The court of appeals agreed with Dow's interpretation of the statute. *See id.* at 347. The court of appeals reversed the trial court's judgment and rendered a take-nothing judgment in favor of Dow, holding that Chapter 95 applied to the Hendersons' claims against Dow because "[t]he plain meaning of the text of [section 95.002(2) ] does not preclude [Chapter 95's] applicability where a claim is based upon the negligent actions of the premises owner." *Id.* The court of appeals reasoned that the claim arose from the condition or use of an improvement (the asbestos-insulated pipeline system) where Robert Henderson, as a contractor, constructed, repaired, renovated, or modified the

improvement. *See id.* at 348. Thus, Chapter 95 applied to the Hendersons' claims against Dow, and the Hendersons had to establish Dow's liability under the standards set forth in Chapter 95, which they failed to do. *Id.* The Hendersons filed a petition for review in this Court, which we initially denied. After considering the Hendersons' motion for rehearing, which cited several recent courts of appeals' decisions that conflicted with the court of appeals' decision in this case, we granted the Hendersons' petition. *See* 58 TEX. SUP. CT. J. 85 (Nov. 24, 2014).

## II. Discussion

[1] [2] As always, "[w]hen construing a statute, we begin with its language." *State v. Shumake,* 199 S.W.3d 279, 284 (Tex.2006). Chapter 95 of the Texas Civil Practice and Remedies Code is titled "Property Owner's Liability for Acts of Independent Contractors and Amount of Recovery." TEX. CIV. PRAC. & REM. CODEE ch. 95. The heart of the chapter, sections 95.002 and .003, establishes Chapter 95's applicability and limitations on a property owner's liability for personal injury, death, or property damage to independent contractors, respectively. [2] *Id.* §§ 95.002–.003. Regarding applicability, section 95.002 states that Chapter 95 "applies only to a claim." *Id.* § 95.002. A "claim" is specifically defined as "a claim for damages caused by negligence." *Id.* § 95.001(1). Section 95.002 then explains that Chapter 95 applies only to a claim for damages caused by negligence:

> (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

> (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

*Id.* § 95.002. Section 95.003 establishes the limitations on a property owner's liability for a claim to which Chapter 95 applies:

> A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property

damage arising from the failure to provide a safe workplace unless:

> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id.* § 95.003.

**[3]** **[4]** **[5]** **[6]** "We review statutory construction de novo." *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.,* 430 S.W.3d 384, 389 (Tex.2014) (citing *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625 (Tex.2008)). We look to the plain meaning of the words in a statute as an expression of legislative intent. *Id.* "If the statute is clear and unambiguous, we must read the language according to its common meaning 'without resort to rules of construction or extrinsic aids.' " *Id.* (quoting *Shumake,* 199 S.W.3d at 284). Thus, we initially limit our statutory review to the plain meaning of the text as the sole expression of legislative intent, *see State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002), unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results, *see Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 635 (Tex.2010).

**\*4** The Hendersons argue that the court of appeals erred by holding that Chapter 95 applies to a claim predicated on a property owner's "contemporaneous negligent acts" and not, according to section 95.002(2), only to a claim that arises when an independent contractor constructs, repairs, renovates, or modifies an improvement to real property. In other words, according to the Hendersons, any claim that falls within the scope of section 95.002 must arise out of the independent contractor's work. They argue that the omission of a "property owner" from section 95.002(2), especially when it is included in section 95.002(1)'s list of possible defendants against whom a claim falling within Chapter 95 might be asserted, establishes that Chapter 95 applies only to claims against property owners arising "out of the contractor's work, and does not apply to a contractor who is a passive victim of the contemporaneous negligent activities of the premises owner."

Dow argues that the court of appeals correctly held that "[t]he plain meaning of the text of [section 95.002(2)] does not preclude [Chapter 95's] applicability where a claim is based upon the negligent actions of the premises owner." [3] 395 S.W.3d at 347. Under Dow's interpretation of the statute, Chapter 95 "applies ... to a claim ... against a property owner ... for damages caused by negligence ... that arises from the condition or use of an improvement to real property." According to Dow, the only condition on Chapter 95's applicability—that the claim arise from the condition or use of an improvement to real property that the contractor "constructs, repairs, renovates, or modifies"—was satisfied because Robert Henderson's asbestos exposure resulted from Dow's employees doing the same work he did on the same asbestos-insulated pipe system. Dow contends that Chapter 95 applies when a negligence claim arises from the "condition or use" of the improvement on which an independent contractor is working, and the claim need not be predicated on a contractor's negligence.

**[7]** **[8]** Neither party seriously contends that Chapter 95 is ambiguous, although the Hendersons argue that the Court should employ several statutory construction aids that are typically reserved for interpreting ambiguous statutes. [4] We read Chapter 95 to be unambiguous, and therefore we apply its plain meaning as the statute is written. *See City of Hous. v. Jackson,* 192 S.W.3d 764, 770 (Tex.2006).

**\*5** The core of Chapter 95's applicability is that it "applies only to a claim," TEX. CIV. PRAC. & REM. CODEE § 95.002, and the Legislature specifically defined a "claim" to mean "a claim for damages caused by negligence," *id.* § 95.001(1). Section 95.002(1) identifies whom a claim for damages caused by negligence subject to Chapter 95 may be brought against: "a property owner, contractor, or subcontractor." *Id.* § 95.002(1). Despite identifying three potential defendants in the applicability provision of section 95.002, the Legislature limited only a property owner's liability in section 95.003. *See id.* § 95.003. Furthermore, although the statute lists whom a claim governed by Chapter 95 can be asserted against, section 95.002 says nothing about the actor who causes the negligence claim to arise and makes no distinction between harm caused by a contractor's actions and harm caused by another's actions. *See id.* § 95.002. Section 95.002(1) simply provides that a claim for damages caused by negligence may be brought for "personal injury, death, or property damage." *Id.* § 95.002(1). That section also identifies the persons who may be damaged as "an owner, a contractor, or a subcontractor or an employee

of a contractor or a subcontractor." [5] *Id.* Reading these provisions together, Chapter 95 applies to a claim against a property owner for an independent contractor's personal injury, death, or property damage caused by negligence. The Legislature did not distinguish between negligence claims based on contemporaneous activity or otherwise, and neither shall we. *Cf. Shumake,* 199 S.W.3d at 287 ("Because it is not defined otherwise, we conclude that the Legislature must have intended for gross negligence to have its commonly-accepted legal meaning.").

The second part of the applicability provision, section 95.002(2), includes several undefined statutory words and phrases that have amassed commonly-accepted legal meanings in this Court's jurisprudence interpreting other tort-related statutes. Section 95.002(2), the most disputed provision in this case, limits Chapter 95's applicability "only to a claim ... that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." TEX. CIV. PRAC. & REM. CODEE § 95.002(2). This Court has analyzed tort-related statutes that include the undefined phrase "arises from" consistently as being intended, at minimum, to capture causation. *See, e.g., Ryder Integrated Logistics, Inc. v. Fayette Cnty.,* 453 S.W.3d 922, 928–29 (Tex.2015) (per curiam) (construing how "arising from" was used in another tort-related statute, discussing prior cases that explained the phrase, and concluding that "a plaintiff can satisfy the 'arising from' standard by demonstrating proximate cause"); *see also* TEX. GOV'T CODE § 311.023(4) (permitting courts to consider laws on similar subjects when construing statutes). Thus, section 95.002(2) provides that Chapter 95 applies to a negligence claim that "arises from," or is caused by, "the condition or use of an improvement to real property where the contractor or subcontractor ... modifies the improvement." [6] TEX. CIV. PRAC. & REM. CODEE § 95.002(2).

We next consider the meaning of the undefined phrase "condition or use of an improvement to real property." *See id.* For four decades, Texas jurists have repeatedly expressed concerns about the difficulty of discerning the Legislature's intended meaning behind the words "condition or use" as they appear in the Texas Tort Claims Act, another tort-related statute. [7] *See, e.g., Tex. Dep't of Crim. Justice v. Miller,* 51 S.W.3d 583, 590 (Tex.2001) (Hecht, J., concurring) (detailing multiple instances when members of this Court "have repeatedly beseeched the Legislature for guidance" on how to interpret the "use-of-property standard" in the

Texas Tort Claims Act to no avail); *Tex. State Technical Coll. v. Beavers,* 218 S.W.3d 258, 261 (Tex.App.–Texarkana 2007, no pet.) ("The courts of Texas have struggled to define the limits of 'use' and 'condition' ... under the Texas Tort Claims Act."). But despite numerous intermediate appellate court decisions interpreting the phrase "condition or use" every way imaginable, we have never held that the phrase rendered the Texas Tort Claims Act ambiguous or inoperable. This Court has agreed, for purposes of the Texas Tort Claims Act, that the "condition or use" provision is "difficult to understand and difficult to apply," but we have never used that characterization "as an excuse to shirk our duty to interpret and apply the statute." *Robinson v. Cent. Tex. MHMR Ctr.,* 780 S.W.2d 169, 171 (Tex.1989). Accordingly, although we review the "condition or use" language in Chapter 95 as a matter of first impression, we draw upon this Court's interpretation of the similar phrase in the Texas Tort Claims Act for guidance. *See* TEX. GOV'T CODE § 311.023(4).

**\*6** This Court has defined a "condition" as "either an intentional or an inadvertent state of being." *Sparkman v. Maxwell,* 519 S.W.2d 852, 858 (Tex.1975). We have defined "use" as meaning "to put or bring into action or service; to employ for or apply to a given purpose." *Miller,* 51 S.W.3d at 588. We have broadly defined an "improvement" to include "all additions to the freehold except for trade fixtures [that] can be removed without injury to the property." *Sonnier v. Chisholm–Ryder Co.,* 909 S.W.2d 475, 479 (Tex.1995) (examining the statute of repose in section 16.009 of the Texas Civil Practice and Remedies Code, which contains the identical phrase "improvement to real property").

Given these definitions, a condition of an improvement to real property represents a different concept than a use of an improvement to real property. Indeed, we have treated a condition or a use as comprising separate prongs of the Texas Tort Claims Act. *See Dall. Metrocare Servs. v. Juarez,* 420 S.W.3d 39, 42 (Tex.2013) (per curiam). This distinction between these two concepts is supported "by use of the disjunctive conjunction 'or' between the two [words], which signifies a separation between two distinct ideas." *Spradlin v. Jim Walter Homes, Inc.,* 34 S.W.3d 578, 581 (Tex.2000). The Legislature's enunciation of the two concepts of "condition or use" is consistent with this Court's common law jurisprudence, also reflected in Chapter 95, surrounding a controlling contractor or property owner's liability for injuries to independent contractors. [8] In the seminal case of *Redinger v. Living, Inc.,* 689 S.W.2d 415 (Tex.1985),

the Court explained that a property owner's "duty to keep the premises in a safe condition may subject the [property owner] to direct liability for negligence in two situations: (1) those arising from a premises defect, (2) those arising from an activity or instrumentality." [9] *Id.* at 417; *see also Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex. 1992) (citing *Redinger,* 689 S.W.2d 415) ("Recovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity.").

These two categories of negligence existed in this Court's jurisprudence prior to the enactment of Chapter 95, and "we presume the Legislature enacts a statute with knowledge of existing law." *Dugger v. Arredondo,* 408 S.W.3d 825, 835 (Tex.2013). More specifically, in a Texas Tort Claims Act case we decided the year before the Legislature enacted Chapter 95, we interpreted the identical phrase "condition or use" to "encompass[ ] disparate bases for liability, one of which is not dependant upon the actions of any employee." *DeWitt v. Harris Cnty.,* 904 S.W.2d 650, 653 (Tex.1995). We explained that the "use" language "encompasses ... liability based on respondeat superior." *Id.* We added that the inclusion of "liability for a condition of real property" existed "in addition to liability based on principles of respondeat superior," and therefore liability for a condition imposed liability for premises defects. *Id.* (emphasis omitted). Quite plainly, in *DeWitt* we held that the inclusion of the "use" language was meant to impose liability for the negligent actions of an employee based on principles of respondeat superior. *Id.* One year after we attached this particular meaning to the phrase "condition or use," the Legislature included the same undefined phrase in Chapter 95. We can only conclude that the Legislature intended for Chapter 95 to apply to all negligence claims that arise from either a premises defect or the negligent activity of a property owner or its employees by virtue of the "condition or use" language in section 95.002(2). *See* TEX. CIV. PRAC. & REM. CODEE § 95.002(2); *Dugger,* 408 S.W.3d at 835.

**\*7** For the sake of thoroughness, we note that section 95.002(2)'s inclusion of "condition or use" preserves the notion that claims based on a premises defect are distinct from claims based on negligent activities. As we have explained, "negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago Partners,*

*Inc. v. Smith,* 307 S.W.3d 762, 776 (Tex.2010) (citations omitted). Despite their differences, both claims are a species of negligence. *See, e.g., W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005) (recognizing that "[p]remises liability is a special form of negligence" and that "[n]egligence and premises liability ... involve closely related but distinct duty analyses"). While it is true that "[w]e have rejected attempts to blur the distinction between these two claims," *Shumake,* 199 S.W.3d at 284, it is nonetheless an accurate statement that both types of claims fall within the common meaning of the term "negligence" that appears, undefined, in section 95.001(1), *see Urena,* 162 S.W.3d at 550.

Next, we address the Hendersons' contention that the court of appeals' opinion "obviates more than a century of Texas common law that holds that a property owner is liable in negligence for its own contemporaneous negligent activity." According to the Hendersons, Chapter 95 did not abrogate common law negligence claims against property owners for their contemporaneous negligent activities. More specifically, the Hendersons argue that "there is no 'clear repugnance' between (i) Chapter 95 claims 'where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement' ... versus (ii) common law claims based on the contemporaneous negligent acts of property owners." Dow cites several cases recognizing that, because of Chapter 95, an independent contractor no longer has a common law negligence claim against a property owner. *See, e.g., Francis v. Coastal Oil & Gas Corp.,* 130 S.W.3d 76, 88 (Tex.App.–Houston [1st Dist.] 2003, no pet.) ("We agree ... that chapter 95 controls this case, is [the independent contractor]'s exclusive remedy against [the property owner], and precludes common-law negligence liability in [the property owner].").

[9] We have explained that statutes can modify or abrogate common law rules, but only when that was what the Legislature clearly intended. *Energy Serv. Co. of Bowie v. Superior Snubbing Servs., Inc.,* 236 S.W.3d 190, 194 (Tex.2007). Because abrogation is disfavored, we examine the statute's plain language for the Legislature's clear intention to replace a common law remedy with a statutory remedy, and we "decline[ ] to construe statutes to deprive citizens of common-law rights unless the Legislature clearly expressed that intent." *Satterfield v. Satterfield,* 448 S.W.2d 456, 459 (Tex.1969); *see also Cash Am. Int'l Inc. v. Bennett,* 35 S.W.3d 12, 16 (Tex.2000). The Hendersons are correct that a clear repugnance between the common law and a statutory cause of action is required for courts to find that the

Legislature abrogated a common law right. *See Cash Am. Int'l Inc.,* 35 S.W.3d at 16.

Here, we do not find the sort of "clear repugnance" that would justify a conclusion that the Legislature intended to abrogate an independent contractor's common law right to recover damages based upon the negligence of property owners. *But see, e.g., Waffle House, Inc.,* 313 S.W.3d at 807 (finding abrogation of common law negligence causes of action where a statutory scheme involved a unique set of standards and procedures and the plaintiff sought to use the common law to circumvent the "panoply of special rules" in the statute). Chapter 95 does not deprive an independent contractor of the right to recover damages from a negligent property owner. In fact, section 95.003 allows for such a recovery as long as the evidentiary burdens of the statute are satisfied. *See TEX. CIV. PRAC. & REM. CODE§ 95.003* ("A property owner is not liable for personal injury, death, or property damage to a contractor ... unless...."). To be sure, when section 95.002 makes Chapter 95 applicable to an independent contractor's negligence claim against a property owner that arises from the condition or use of an improvement to real property, the independent contractor's sole means of recovery is by satisfying section 95.003. This is consistent with the court of appeals' holding that when Chapter 95 applies to an independent contractor's claims, the independent contractor has "the burden to show that both conditions of section 95.003 [have] been met before liability could be imposed upon" the property owner. 395 S.W.3d at 348.

 **\*8 [10]** Moreover, by its own terms, Chapter 95's limitation on liability does not apply to all negligence claims an injured independent contractor may assert. *See TEX. CIV. PRAC. & REM. CODE§ 95.002(2).* When a claim does not "arise from a condition or use of an improvement to real property where the contractor or subcontractor ... modifies the improvement," Chapter 95 does not apply and an independent contractor can recover for common law negligence. *See Felton v. Lovett,* 388 S.W.3d 656, 660 & n.10 (Tex.2012) (declining to recognize abrogation of the common law because the statute did "not purport to affect the common law in cases other than those the statute covers"). This Court has developed a comprehensive body of law on property owner liability for injuries suffered by independent contractors that will continue to apply to cases when the applicability provision of section 95.002 cannot be met. *See generally Gen. Elec. Co. v. Moritz,* 257 S.W.3d 211, 214–15 (Tex.2008) (explaining the duties owed to independent contractors under negligent activity and premises defect

theories). Similarly, when a claim is brought against a contractor or a subcontractor, section 95.003's limitation on liability does not apply and an independent contractor can recover for common law negligence. *See TEX. CIV. PRAC. & REM. CODE§ 95.003* (limiting only a property owner's liability). We conclude that Chapter 95 did not abrogate an independent contractor's right to recover for common law negligence in all instances. If anything, Chapter 95 is in derogation of the common law, and Texas courts do not strictly construe such statutes. *See TEX. GOV'T CODE§ 312.006(b).*

Having concluded that Chapter 95 applies to an independent contractor's claims for damages caused by the contemporaneous negligent acts of a property owner, Dow could be subject to liability only if the Hendersons satisfied the evidentiary burdens in both prongs of section 95.003. *See TEX. CIV. PRAC. & REM. CODE§ 95.003.* At trial and at the court of appeals, the Hendersons sought to establish that negligence claims based on a property owner's or its employees' contemporaneous negligent activities did not fall within Chapter 95, but the Hendersons never sought to establish Dow's liability in the event that Chapter 95 did, in fact, apply to their claims. *See* 395 S.W.3d at 348. In this appeal, the Hendersons do not challenge the court of appeals' conclusion that "[o]n this record, ... Chapter 95 is applicable to all of [the Hendersons'] claims against Dow." *See id.* In fact, the Hendersons urge us not to address Chapter 95's applicability to their specific claims in this case: "But this debate—is the improvement the entire pipe system at Dow or the specific pipes [Robert] Henderson was working on–need not be reached in this case...." Most importantly, the Hendersons have not challenged the court of appeals' conclusion that "the record does not support a finding of liability as to Dow pursuant to the requirements of Chapter 95." *Id.* Issues not raised on appeal to this Court are waived. *Guitar Holding Co., L.P. v. Hudspeth Cnty. Underground Water Conservation Dist. No. 1.,* 263 S.W.3d 910, 918 (Tex.2008) (citing TEX. R. APP. P. 53.2(f)); *see also Del Lago Partners, Inc.,* 307 S.W.3d at 776 ("[W]e should not stretch for a reason to reverse that was not raised.").

In sum, the Hendersons failed to challenge the court of appeals' conclusions that: (1) their specific claims against Dow, as pleaded and applied, fell within Chapter 95, and (2) their claims were barred by Chapter 95 because the Hendersons did not establish Dow's liability under section 95.003. Because these conclusions were not challenged, they are not properly before the Court and we do not decide

whether the court of appeals correctly applied Chapter 95 to the facts of this case. *See Guitar Holding Co., L.P., 263 S.W.3d at 918*. Accordingly, because we agree with the court of appeals' construction of Chapter 95, we affirm its judgment reversing the trial court's judgment and rendering a take-nothing judgment in Dow's favor. This obviates the need to address the remaining issues Dow raises in this appeal.

### III. Conclusion

The court of appeals correctly held that Chapter 95 applies to independent contractors' claims against property owners for damages caused by negligence when those claims arise from the condition or use of an improvement to real property where the independent contractor constructs, repairs, renovates, or modifies the improvement. Chapter 95 limits property owner liability on claims for personal injury, death, or property damage caused by negligence, including claims concerning a property owner's own contemporaneous negligent activity. The Hendersons have not challenged the court of appeals' conclusion that Chapter 95 applied to their specific claims as pleaded, nor have they challenged the court of appeals' conclusion that they failed to establish Dow's liability under section 95.003. We therefore affirm the court of appeals' judgment that reversed the trial court's judgment and rendered a take-nothing judgment in Dow's favor.

Footnotes

1      The trial court overruled Dow's objection that Chapter 95 precluded the submission of a general negligence question. The trial court also denied Dow's requested jury instructions and questions that would have required the Hendersons to establish Dow's liability based upon Chapter 95's requirements.

2      For ease of reference, this opinion uses the phrase "independent contractor" as a shorthand substitute for the lengthier statutory phrase of "a contractor, subcontractor, or an employee of a contractor or subcontractor" that appears in Chapter 95. *See* TEX. CIV. PRAC. & REM. CODE E §§ 95.002–.004. Although the phrase "independent contractor" does not appear in the text of Chapter 95, it appears in Chapter 95's title and section 95.003's heading, "Liability for Acts of Independent Contractors." *See id.* § 95.003.

3      Both parties and the court of appeals used the phrase "premises owner" when referring to Chapter 95 and its contents. The word "premises" does not appear in Chapter 95. Instead, the chapter uses the phrase "property owner," which section 95.001(3) defines to mean "a person or entity that owns real property primarily used for commercial or business purposes." TEX. CIV. PRAC. & REM. CODEE § 95.001(3). We use the phrase "property owner" to remain consistent with the statutory text.

4      For instance, the Hendersons urge the Court to consider several titles in Chapter 95, legislative statements of the bill's sponsors, and a canon of construction called the doctrine of the last antecedent as indications of legislative intent. When the plain meaning of a statute controls, however, "the title of the section carries no weight, as a heading 'does not limit or expand the meaning of a statute.' " *Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 809 (Tex.2010) (quotingTEX. GOV'T CODE § 311.024). Moreover, "[w]hen a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language." *City of Rockwall,* 246 S.W.3d at 626; *see also Tex. W. Oaks Hosp., LP v. Williams,* 371 S.W.3d 171, 185 (Tex.2012) (recognizing that the doctrine of the last antecedent applies to ambiguous statutes); *Stracener v. United Servs. Auto. Ass'n,* 777 S.W.2d 378, 383 (Tex.1989) (recognizing that the doctrine of the last antecedent is merely an aid used to determine the meaning and intent of communications, and it is not applicable in every case).

5      Although section 95.002(1) specifies who may be damaged for purposes of Chapter 95, section 95.001(2) defines a "claimant" more broadly to mean "a party making a claim subject to this chapter." TEX. CIV. PRAC. & REM. CODE E § 95.001(2). The word "claimant" appears only in the special legislative definitions and nowhere else in Chapter 95. *See id.*

6      Once again, only for ease of reference–and not to indicate a lack of significance for the words omitted—we have shortened section 95.002(2)'s phrase "constructs, repairs, renovates, or modifies the improvement" simply to "... modifies the improvement."

7      The Texas Tort Claims Act uses the phrase "condition or use of tangible personal or real property." TEX. CIV. PRAC. & REM. CODEE § 101.021. The Texas Tort Claims Act is distinguishable, however, because there is a separate section that applies specifically to claims for premises or special defects. *Id.* § 101.022. In contrast, Chapter 95's plain language does not require courts to classify certain negligence claims for different treatment.

8      Below, we address the Hendersons' contention that Chapter 95 did not abrogate common law negligence claims against property owners, or that any such finding of abrogation was impermissible. *See infra* pp. ——.

9    Thereafter, the Court adopted the RESTATEMENT (SECOND) OF TORTS § 414 (1977) approach for imposing liability on a property owner or general contractor that controls the work of an independent contractor who is negligently injured. *See Redinger,* 689 S.W.2d at 418.

**End of Document**                                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.