

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOHN BARFIELD AND TANA BARFIELD, WIFE, INDIVIDUALLY, AND JOHN BARFIELD AND TANA BARFIELD AS NEXT FRIENDS OF C. B. AND K. B., MINOR CHILDREN,<br><br>Appellants,<br><br>v.<br><br>SANDRIDGE ENERGY, INC., AND JOSE PEPE SAENZ,<br><br>Appellees. | §<br>§<br>§<br>§<br>§<br>§<br>§ | No. 08-17-00059-CV<br><br>Appeal from the<br><br>109th District Court<br><br>of Andrews County, Texas<br><br>(TC# 19145) |

## DISSENTING OPINION

Finding myself in partial disagreement with my colleagues, I respectfully dissent.  There is no need to restate the facts of the case that are ably set forth in the majority opinion.  We also agree that Chapter 95 controls this dispute, and dictates that SandRidge is not liable for John Barfield's horrific injury unless (1) it exercised or retained "some control over the manner in which [his work was] performed, other than the right to order the work to start or stop or to inspect progress or receive reports[,]" (2) it had "actual knowledge of the danger or condition" that resulted in the injury, and (3) it "failed to adequately warn."  *See* TEX.CIV.PRAC.&REM.CODE ANN. § 95.003.

1

As to the first two elements, I agree with the majority's ultimate conclusions. Chapter 95 incorporates the classic formulation for control articulated in *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985), *citing* Restatement (Second) of Torts § 414 (1965) ("One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."). And on this record, SandRidge's own safety policy required that its transmission lines should be de-energized for this kind of work. But on at least one occasion, its on-site supervisor instructed Barfield's employer that it needed the supervisor's permission to do so, and at other times the supervisor expressed the view that it would take longer to de-energize the lines than finish the job. While the details of how these statements impacted Barfield's work on the day in question are sparse, we are hearing this case from a granted summary judgment. As such, we review the evidence in the light most favorable to Barfield. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P. C.*, 73 S.W.3d 193, 208 (Tex. 2002). At the barest minimum, that testimony suggests that SandRidge retained the right to control that aspect of the job. And that aspect of the job directly relates to injury causing event. *See Painter v. Sandridge Energy, Inc.*, 511 S.W.3d 713, 720 (Tex.App.--El Paso 2015, pet. denied) (collecting cases for the proposition that "the right to control must extend to the specific activity from which the injury arose").

Nor does SandRidge take serious issue with its actual knowledge of the risk. It owned the transmission lines. It knew the lines carried high voltage current that presented a serious risk of injury on contact. At this stage, Barfield could establish a genuine issue of material fact by

producing more than a scintilla of evidence regarding any challenged element. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). He did so on this element as well.

Instead, my disagreement turns on the third predicate element found in Chapter 95--the duty to adequately warn of the hazard. SandRidge provided evidence that Barfield was aware that the top lines on the pole were energized, as did his employer. They had previously done similar work around energized lines for SandRidge. A job hazard analysis worksheet from Barfield's employer, completed prior to the work at issue, noted the "hot lines" around the overhead work being done. These facts were conceded. Their import to the issue of warning takes us down three paths.

First, Barfield urges that SandRidge's motion for summary judgment is limited to its claim that it owed "no duty" to warn. He urges, however, that Chapter 95 belies that argument because the statute itself imposes a duty to warn when the landowner controls the details of the work and has actual knowledge of the hazard. According to Barfield, the Texas Supreme Court's "no duty" analysis in *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193 (Tex. 2015), upon which SandRidge relies, must therefore take a backseat to the statutory analysis of Chapter 95. Under that view, Barfield's knowledge of the risk does not become relevant until the jury addresses contributory negligence.

SandRidge's motion, however, not only asserted a "no duty" ground, but in a separately headed section, it also claimed that "SandRidge's warning was adequate as a matter of law." It argued: "Conversely, even if the Court erroneously concluded that SandRidge owed a duty to warn Barfield about the energized poles, SandRidge would be entitled to judgment as a matter of law because the evidence conclusively establishes that SandRidge did not fail to adequately warn Barfield of this condition." To be sure, SandRidge does not point to any particular warning that it

3

gave. Rather, it essentially claims that because Barfield was fully aware of the condition, even a silent-nothing-said warning is adequate as a matter of law. Or, not saying anything can be an adequate warning when the other person is fully aware of the risk. Whether stated as a "no duty" claim, or as a "we fulfilled our duty" argument, I view the motion as sufficient to raise the core issue presented here: under Chapter 95, must a landowner affirmatively warn an invitee of a hazard of which the invitee is fully aware? Subject to some exceptions, the answer to that question in my mind is no.

Under common law principles, *Austin v. Kroger* answers that question for an employee complaining of the employer's failure to provide a safe workplace. In that case the court held that an employee generally cannot recover against a non-subscribing employer for an injury caused by a premises defect of which the employee was fully aware but that his job duties required him to remedy. 465 S.W.3d at 217. More specific to this situation, the court in *General Elec. Co. v. Moritz*, held that a loading ramp at a warehouse which lacked railings was an open and obvious condition, for which the independent contractor, and not the landowner needed to warn or make safe. 257 S.W.3d 211, 215-16 (Tex. 2008).[1] And as the court stated in *Wilhelm v. Flores*, "Nor would Wilhelm, as occupier of the premises where the beehives were kept, have owed an independent contractor's employees a duty to warn them about being stung, since that danger was obvious." 195 S.W.3d 96, 98 (Tex. 2006).

Barfield argues, however, that Chapter 95 would have us put blinders on as to what the invitee might know. In applying the statute as written, he urges that we must look only at what

---

[1] *Moritz* opens with this question: "Must a landowner warn an independent contractor's employees of obvious hazards they already know about? Four times in the last ten years this Court has said the answer is 'No.'" *Id.* at 213 n.1, *citing Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *Wilhelm v. Flores*, 195 S.W.3d 96, 98 (Tex. 2006) ; *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 295 (Tex. 2004); *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999).

warnings the landowner gave, and here it said nothing. If that were true, however, a landowner would be required to mechanically issue warnings about every conceivable hazard governed by Chapter 95, even those that skilled workers or people of ordinary common-sense would already know. If Barfield was hired to work atop of a tall crane, would SandRidge really have to affirmatively say, "if you fall several hundred feet, you might die?" Moreover, because the legislature used the term "adequate warning," the knowledge of the recipient of the warning must enter into the equation. What might be an adequate warning for a master electrician might not be for an apprentice helper.

It is of course "the Legislature's prerogative to enact statutes" and our "responsibility to interpret those statutes according to the language the Legislature used[.]" *Molinet v. Kimbrell*, 356 S.W.3d 407, 414-15 (Tex. 2011). But we do so unless the "result of the plain meaning of the language yield[s] absurd or nonsensical results." *Id.* Requiring a landowner to warn about risks the invitee is well aware, and perhaps more aware of by virtue of his or her expertise, hits the absurd or nonsensical button for me. Barfield correctly suggests that a jury might later terminate this case in SandRidge's favor with a favorable comparative causation finding. But that would be well after the parties expend considerable resources discovering and trying the case.

Barfield alternatively argues that if we consider common law jurisprudence, then the "necessary-use" exception found in those cases applies here. But that doctrine is, after all, an exception. As such, it would be incumbent on Barfield to show its application (once SandRidge first met an initial burden to show an adequate warning). In *Kroger*, the court states that the necessary use exception applies when "(1) it was necessary that the invitee use the unreasonably dangerous premises and (2) the landowner should have anticipated that the invitee was unable to avoid the unreasonable risks despite the invitee's awareness of them." 465 S.W.3d at 207, *citing*

*Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex. 1978). Here, Barfield did not show that an electrical contractor would be unable to avoid an unreasonable risk in working around energized power lines.[2] Additionally, *Moritz* explicitly rejected a *Parker* necessary-use exception in a case analogous to this one. *Moritz*, 257 S.W.3d at 216.

The third issue for me is that the adequacy of the warning is not truly at issue. Barfield is not claiming that he believed the current was at one voltage, when it was actually another. Nor does he claim that he was told that only one line was energized, when in fact two were hot. The parties treat the voltage and amperage as dangerous, ascribing no significance to whatever differences in information that they may have had. The majority weaves into this question, however, SandRidge's work requirements that the contractors should have a pre-job meeting to discuss work hazards. The majority implicitly suggests that had such a meeting been held, a more robust warning might have been given, or plan devised to avoid the hazard. But those meetings, at least on this record, suggest nothing more than a means to communicate about the hazards on the job. Because the hazard was already known, the absence of the meeting does not impair the adequacy of the warning. Alternatively, if the purpose of the meeting was to devise the safest work practices, that duty already fell on Barfield's employer, and not the SandRidge. A general contractor does not owe a duty to ensure that an independent contractor performs its work in a safe manner. *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001), *citing Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999) and *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex. 1998).

---

[2] The federal regulations that Barfield cites contemplate that there might be times when the power lines cannot be de-energized, and that workers must then work around hot lines. This suggests that there must be some appropriate procedure for doing so.

I acknowledge the difficulty in deciding which of the many common-law-premises-liability precedents should inform our application of Chapter 95, and which do not. *See Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (Tex. 2015) (discussing whether Chapter 95 was intended to modify or abrogate common law rules). *Abutahoun* itself states that cases like *Moritz* "will continue to apply to cases when the applicability provision of section 95.002 cannot be met." *Id.* at 52. That language might suggest that *Moritz* does not apply to a Chapter 95 claim when section 95.002 is met. Nonetheless, for the reasons noted above, I respectfully dissent to my colleagues' thoughtful opinion.

 

                                          _____

                                          JEFF ALLEY, Chief Justice

December 6, 2019