# Supreme Court of Texas

No. 20-0451

Energen Resources Corporation,

*Petitioner*,

v.

Bryce J. Wallace, Elite Drillers Corporation, and United Fire &
Casualty and Its Parent, United Fire Group, Inc.,

*Respondents*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

JUSTICE BLACKLOCK, joined by JUSTICE YOUNG, concurring.

Chapter 95's limitations on liability "appl[y] only to a claim . . . :

(2) that arises from the condition or use of an improvement
to real property where the contractor or subcontractor
constructs, repairs, renovates, or modifies the
improvement."

TEX. CIV. PRAC. & REM. CODE § 95.002.

The plaintiffs allege they were injured while working on a water well, which was in a dangerous condition due to a gas leak coming from a nearby oil well. I agree with the Court that Chapter 95 applies to this claim. It does so because of the basic facts giving rise to the claim. The

"improvement to real property" being "repair[ed]" was the water well. This improvement was in a dangerous "condition"—it contained gas leaking from the oil well. The dangerous condition caused an explosion, injuring the plaintiffs. The plaintiffs' claims thus "arise[] from" the dangerous condition of the improvement, triggering Chapter 95. I see no basis in the statutory text for any further analysis.

Although the Court reaches the correct result, it does so only after unduly complicating Chapter 95's application. According to the Court, "Chapter 95 does not apply to a claim simply because the plaintiffs were injured by the condition or use of an improvement on which they were working." *Ante* at 2. Instead, "negligence that was a cause of the plaintiffs' damages must involve the condition or use of the improvement on which they were working." *Id.* By requiring that the *negligence* "involve" the improvement, the Court adds unwarranted doctrinal baggage to a straightforwardly worded statute that very clearly applies to this case.

Determining whether Chapter 95 applies need not be so difficult. One might imagine some initial confusion about the statute's use of the potentially slippery words "arises from." But this Court has already cleared that up. "Arises from," in Chapter 95, means simply "is caused by." *Endeavor Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 310 (Tex. 2019); *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 48 (Tex. 2015); *see also Utica Nat'l Ins. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) ("This Court has held that 'arise out of' means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate

causation.") (quoting *Mid–Century Ins. v. Lindsey,* 997 S.W.2d 153, 156 (Tex. 1999)).

So what "causes" a negligence claim? In the strictest sense, a negligence claim is an abstraction that "arises from" the mind of the lawyer. In a more practical sense, surely the sense in which Chapter 95 speaks, a negligence claim is caused by—and therefore arises from—the factual allegations on which the claim is based. And no fact is more foundational to a negligence claim than the injurious accident giving rise to the claim. The accident—and the injury it produces—are the brute facts of the case, from which the abstraction we call a "claim" arises. Who is responsible for the accident? Were they negligent? Did the negligence cause the injury? These questions follow from the fact of the accident itself—or arise from it, you might say. But they are farther down the causal chain. The injurious accident is the originating cause without which a "claim" could not even begin to exist.

I would not say the injurious accident is the *sole* "cause" of a negligence claim. A negligence claim surely has additional causes, such as the negligence allegations on which the Court focuses. But there are other causes of the damages (such as the injury itself), and surely the claim "arises from" those causes just as much as it arises from the alleged negligence.

In the past, we have not interpreted the Legislature's use of "arises from" to require courts to identify a sole causal source to the exclusion of all others. Claims—or in the Tort Claims Act, injuries—can "arise from" multiple causal sources, any one of which is sufficient to satisfy the "arising from" requirement. *Endeavor*, 593 S.W.3d at 311

(holding that a claim can "arise from" a "combination" of acts and concluding that "[t]he statute's plain language requires only that the claim arise from the use of an improvement to the property, not . . . that the use of the improvement be the *only* cause of the injury"); *see also PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 303 (Tex. 2019) (noting that there may be more than one cause that satisfies the Tort Claims Act's "arises from" standard). Today, however, the Court interprets Chapter 95's "arises from" requirement to require exclusive focus on one cause of the claim—the negligence—to the exclusion of other causes, such as the injury.

The Court's textual basis for its restricted view of where claims "arise from" is Chapter 95's definition of "claim": "a claim for damages caused by negligence." TEX. CIV. PRAC. & REM. CODE § 95.001(1). This definition limits Chapter 95 to negligence claims, but it tells us nothing about where negligence claims "arise from." The definition's straightforward recitation of the elements of a negligence claim cannot bear the weight the Court puts on it. As the statute is written, it is the claim—not the negligence—that must "arise from" the condition or use of the improvement in order for Chapter 95 to apply.

Of the many things that might be said to "cause" a negligence claim, none is clearer than the injurious accident from which the claim originates. Whether an injury was caused by the condition or use of an improvement will typically be apparent from the hard facts alleged about the accident, reducing litigation and uncertainty about Chapter 95's application. Negligence, on the other hand, is a malleable legal construct. Whereas the facts of the accident are what they are,

4

deciding where and to whom to assign the negligence is often a strategic decision made by lawyers. If Chapter 95 only applies if the alleged negligence "involves" the improvement, lawyers will look for creative ways to plead around Chapter 95—even in cases where a condition or use of the improvement caused the injury and therefore gave rise to the claim. The result will be lengthier and more indeterminate litigation over whether the case meets the Court's unnecessary rearticulation of Chapter 95's requirements.

The Court relies primarily on its prior decisions in *Endeavor* and *Abutahoun*, neither of which requires the rule the Court announces. To the extent we have ever addressed whether Chapter 95 applies *only* if the alleged negligence "involves" the improvement, we suggested in *Endeavor* that it does not: "The statute's plain language requires only that the claim arise from the use of an improvement to the property, not that the property owner's negligence involve the use of the improvement." *Endeavor*, 593 S.W.3d at 311. To be sure, in *Endeavor*, we answered whether the claim arose from the use of an improvement by analyzing whether the alleged negligence involved the improvement. *Id.* That is certainly one way to answer the question. But what *Endeavor* said was *sufficient*, the Court now deems *necessary*. Our prior case law does not require that jump, and neither, as I read it, does the text of Chapter 95.

The process of reasoning the Court used in *Endeavor* when applying Chapter 95 to the facts and arguments raised there does not generate a rule requiring all future courts to use precisely the same process of reasoning. When this Court employs a line of reasoning to

5

think its way through a statute's application to a particular case, it is not announcing a binding rule that the same line of reasoning now controls all cases. Of course, courts should strive to apply statutes consistently and to use consistent reasoning in doing so. But when applying statutes, an outsized focus on the reasoning of prior cases can result in precedent that builds and builds upon itself—even with each case correctly decided—until a case comes along where the precedent and the statute seem to be pointing in different directions. *See PHI*, 593 S.W.3d at 305–06 (rejecting elements of reasoning derived from the Court's precedent "in a case where application of those elements yields a result that conflicts with a common-sense reading of the statutory text").

Rather than load more judicial constructs onto Chapter 95, we should back up and ask whether many of our prior statements about it truly illuminate—rather than obscure—what seems to me an uncomplicated statutory text. We are not bound to follow the reasoning of our precedents to the ends of the earth. We are bound to follow the text of the statute, which in my view does not support the rule the Court adopts today.

I respectfully concur.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** March 11, 2022

6