

# KEN PAXTON

ATTORNEY GENERAL OF TEXAS

April 23, 2018

Mr. Randall Rice
Galveston County Auditor
Post Office Box 1418
Galveston, Texas 77553

Opinion No. KP-0192

Re: Procedures regarding reappraisal of property after a disaster (RQ-0188-KP)

Dear Mr. Rice:

You ask about the procedures for property reappraisal after a disaster.[1] Hurricane Harvey recently caused significant property damage resulting in a Governor-declared disaster for sixty counties.[2] Request Letter at 2. You explain that although multiple taxing jurisdictions in this area requested disaster reappraisal, some are reluctant to proceed due to unanswered questions about the process. *Id.* You therefore seek guidance on the costs and notice requirements of the disaster reappraisals.

The governing body of a taxing unit in a Governor-declared disaster area "may authorize reappraisal of all property damaged in the disaster at its market value immediately after the disaster." TEX. TAX CODE § 23.02(a). A taxing unit that authorizes a reappraisal "must pay the appraisal district all the costs of making the reappraisal." *Id.* § 23.02(c). Related to this provision, you first ask "whether the taxing unit would be responsible only for the extraordinary additional and reasonable costs." Request Letter at 1.

Answering your question first requires an understanding of an appraisal district's operations, budget, and financing. The Legislature established an appraisal district in each county, and the districts are separate political subdivisions of the State. TEX. TAX CODE § 6.01(a), (c). Each year, the board of directors of an appraisal district approves a budget prepared by the chief

---

[1]Letter from Randall Rice, Galveston Cty. Auditor, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Oct. 25, 2017), https://www.texasattorneygeneral.gov/opinion/requests-for-opinions-rqs ("Request Letter").

[2]The Governor issued a disaster proclamation on August 23, 2017, certifying that Hurricane Harvey posed a threat of imminent disaster for Aransas, Austin, Bee, Brazoria, Calhoun, Chambers, Colorado, DeWitt, Fayette, Fort Bend, Galveston, Goliad, Gonzales, Harris, Jackson, Jefferson, Jim Wells, Karnes, Kleberg, Lavaca, Liberty, Live Oak, Matagorda, Nueces, Refugio, San Patricio, Victoria, Waller, Wharton and Wilson counties. Tex. Gov. Proclamation No. 41-3548, 42 Tex. Reg. 4541, *also available at* https://gov.texas.gov/news/post/Disaster-Proclamation-Issued-For-30-Texas-Counties-in-Anticipation-Of-Tropical-Depression-Harvey-Making-Landfall. The Governor subsequently amended his proclamation to add additional counties, including Angelina, Atascosa, Bastrop, Burleson, Bexar, Brazos, Caldwell, Cameron, Comal, Grimes, Guadalupe, Hardin, Jasper, Kerr, Lee, Leon, Madison, Milam, Montgomery, Newton, Orange, Polk, Sabine, San Augustine, San Jacinto, Trinity, Tyler, Walker, Washington and Willacy counties, and he extended the disaster proclamation multiple times thereafter. *See* https://gov.texas.gov/news/post/governor-abbott-extends-disaster-proclamation-for-60-texas-counties.

appraiser. *Id.* § 6.06(a), (b). Each taxing unit participating in the district is allocated a portion of the amount of the budget based on its proportion of taxes imposed in the district.[3] *Id.* § 6.06(d).

The board of directors of an appraisal district must develop and approve biennially a written plan for the periodic reappraisal of all property within the boundaries of the district.[4] *Id.* § 6.05(i). The district must reappraise all property in the district "at least once every three years." *Id.* § 25.18(b). Appraisal districts operate under their own individualized plans. However, as one example, the Galveston Central Appraisal District 2017–2018 Reappraisal Plan requires the appraisal district to reappraise one-third of the district's eight independent school districts each year. Plan at 7. During the reappraisal, "[a]ppraisers drive the county and gather data about each home, commercial business or vacant tract. The appraisers walk from property to property measuring the structures and noting the condition of the property and noting any changes to the property since the last physical inspection." *Id.* at 4–5; *see also* TEX. TAX CODE § 25.18(b)(1) (requiring properties "to be appraised through physical inspection or by other reliable means of identification"). The appraisal district then uses the information gathered during these inspections along with other relevant property characteristics to determine the current value of the property. TEX. TAX CODE § 25.18(b)(7).

Given that the law requires periodic reappraisal of property and appraisal districts conduct property reappraisals throughout the year, some of the property the appraisal district will reappraise due to a disaster would be reappraised even without the disaster. The costs of standard, periodic appraisals are normal operating costs, and appraisal districts may not capitalize on a disaster by requesting additional funds from taxing units for expenses they would incur regardless of the disaster. However, subsection 23.02(c) requires taxing units requesting a reappraisal to pay all costs of making the post-disaster reappraisal. *Id.* § 23.02(c). Thus, to the extent that an appraisal district incurs additional costs resulting from a disaster reappraisal, participating taxing units must fund those extra expenses.

You next ask whether the Tax Code requires a chief appraiser to provide notice to a property owner when the owner's property value decreases as a result of the disaster reappraisal. Request Letter at 1. In authorizing disaster reappraisal through section 23.02, the Legislature did not expressly address notice requirements related to that process. *See* TEX. TAX CODE § 23.02. Section 25.19 establishes general notice requirements for appraised property. *Id.* § 25.19.

---

[3]*See* TEX. TAX CODE § 6.06(j) ("If the total amount of the payments made or due to be made by the taxing units participating in an appraisal district exceeds the amount actually spent or obligated to be spent during the fiscal year for which the payments were made, the chief appraiser shall credit the excess amount against each taxing unit's allocated payments for the following year in proportion to the amount of each unit's budget allocation for the fiscal year for which the payments were made.").

[4]The 2017–2018 Galveston County Reappraisal Plan (hereafter "Plan") is available at http://www.galvestontx.gov/AgendaCenter/ViewFile/Item/3143?fileID=10934.

Subsection 25.19(a) requires the chief appraiser to deliver notice to a property owner in four specific circumstances:

> (1) the appraised value of the property is greater than it was in the preceding year;
>
> (2) the appraised value of the property is greater than the value rendered by the property owner;
>
> (3) the property was not on the appraisal roll in the preceding year; or
>
> (4) an exemption or partial exemption approved for the property for the preceding year was canceled or reduced for the current year.

*Id.* § 25.19(a). Except for these four unique circumstances, subsection (a) does not require a chief appraiser to provide notice to a property owner when a reappraisal results in a decrease in property value. However, subsection 25.19(g) provides:

> By April 1 or as soon thereafter as practicable if the property is a single-family residence that qualifies for [a homestead exemption], or by May 1 or as soon thereafter as practicable in connection with any other property, the chief appraiser shall deliver a written notice to the owner of each property not included in a notice required to be delivered under Subsection (a), *if the property was reappraised in the current tax year*, if the ownership of the property changed during the preceding year, or if the property owner or the agent of a property owner authorized under Section 1.111 makes a written request for the notice.

*Id.* § 25.19(g) (emphasis added).[5] The plain language of this provision requires the chief appraiser to provide written notice to a property owner in any year that property is reappraised, and the Legislature made no exception to this requirement for disaster reappraisals. *See Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015) ("We look to the plain meaning of the words in a statute as an expression of legislative intent.").

Notice provided pursuant to subsection 25.19(g) initiates the formal process for protesting the new appraised value. *See* TEX. TAX CODE § 25.19(g)(3) (requiring the notice to include "a detailed explanation of the time and procedure for protesting the value"). With that process comes certain deadlines by which a taxpayer must protest the appraised value or risk waiving the right to do so.[6] Such deadlines may pose significant burdens for disaster victims still working toward

---

[5]"Tax year" is defined as "the calendar year." TEX. TAX CODE § 1.04(13).

[6]In most cases, a property owner will "have until May 31 or 30 days from the date the appraisal district notice is delivered — whichever date is later" to file a notice of protest with the appraisal review board. *See* https://comptroller.texas.gov/taxes/property-tax/protests/index.php; *see also* TEX. TAX CODE § 41.44(a).

recovery, some of whom are still not able to move back into their damaged homes.[7] In construing statutes, courts rely first and foremost on the plain meaning of a statute. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014). They may not correct omissions in legislation by reading words into a statute that the Legislature did not include. *R.R. Comm'n of Tex. v. Miller*, 434 S.W.2d 670, 672 (Tex. 1968). Thus, a court would likely conclude that the Tax Code requires a chief appraiser to provide notice to a property owner of a reappraisal when the owner's property value decreases as a result of the disaster reappraisal.[8]

To the extent that providing such notice creates a hardship for hurricane victims to exercise their rights to protest the new appraised value, taxing units should be advised of their ability to request a suspension of the statutory appraisal protest deadlines. Government Code section 418.016(e) provides:

> On request of a political subdivision, the governor may waive or suspend a deadline imposed by a statute or the orders or rules of a state agency on the political subdivision, including a deadline relating to a budget or ad valorem tax, if the waiver or suspension is reasonably necessary to cope with a disaster.

TEX. GOV'T CODE § 418.016(e). Pursuant to his authority under section 418.016, the Governor already proclaimed "any regulatory statute prescribing the procedures for conduct of state business or any order or rule of a state agency that would in any way prevent, hinder or delay necessary action in coping with this disaster shall be suspended on written approval of the Office of the Governor."[9] The Governor likewise may suspend statutory deadlines applicable to political subdivisions if reasonably necessary to cope with a disaster and if requested to do so by the political subdivisions.

---

[7]Multiple briefs submitted in response to this request emphasize the hardship that property owners may have in attempting to protest their new appraisals while continuing their disaster recovery. *See* Letter from Rob Henneke, Gen. Counsel, Tex. Pub. Policy Found. at 3 (Nov. 17, 2017); Letter from Cheryl E. Johnson, Galveston Cty. Tax Assessor Collector at 3 (Nov. 13, 2017) (briefs on file with the Op. Comm.). In some instances, the appraisal review board will have discretion to accept protests after the deadline for filing has passed if the taxpayer shows good cause for failure to file the notice of protest within the deadline. TEX. TAX CODE § 41.44(b).

[8]Because you condition your third question on a negative answer to the second, we do not address it. *See* Request Letter at 1.

[9]Tex. Gov. Proclamation No. 41-3567, 42 Tex. Reg. 6851, 6852 (2017), *also available at* https://gov.texas.gov/uploads/files/press/DisasterHarveyBlanketProc_11192017.pdf.

### S U M M A R Y

Pursuant to subsection 23.02(c) of the Tax Code, a taxing unit authorizing a disaster reappraisal must pay the appraisal district all the costs of making the reappraisal. Appraisal districts may not capitalize on a disaster by requesting additional funds from taxing units for expenses the appraisal district would incur regardless of the disaster. To the extent that an appraisal district incurs additional costs resulting from a disaster reappraisal, it may require participating taxing units to fund those extraordinary expenses.

Section 25.19 of the Tax Code requires a chief appraiser to deliver a written notice to the owner of each property that was reappraised in the current tax year. The Legislature made no exception to this requirement for disaster reappraisals conducted pursuant to section 23.02 of the Tax Code. Thus, a court would likely conclude that a chief appraiser must provide notice to a property owner of a reappraisal when the owner's property value decreases as a result of the disaster reappraisal.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee